**Hubert L. SNEAD**

v.

**AMERICAN EXPORT-ISBRANDTSEN LINES, INC.**

Civ. A. No. 69–718.

United States District Court,
E. D. Pennsylvania.

March 28, 1973.

Stanley P. Kops, Philadelphia, Pa., for plaintiff.

John T. Biezup, Philadelphia, Pa., for defendant.

Before VAN ARTSDALEN, HU-YETT and DITTER, District Judge.

## OPINION

DITTER, District Judge.

This case raises the question as to the scope of discovery concerning surveillance of a plaintiff who claims personal injuries.

Hubert L. Snead is a merchant seaman. This action was brought to recover damages resulting from an alleged accident aboard a ship operated by the defendant. The motion presently before the court was filed because the defendant has refused to answer plaintiff's interrogatories which concern secret motion pictures taken to reveal the true nature and extent of plaintiff's injuries. Specifically, the plaintiff wants to know whether there are such pictures and if so, all of the details as to how, when, where, and by whom they were taken. In addition, the interrogatories ask information as to any other surveillance of plaintiff and any investigation concerning him by the defendant.

The main purpose for secret motion pictures of a plaintiff is to impeach his credibility. Films taken without the knowledge of the subject often have a dramatic impact in court. One who has described in elaborate detail his disabilities, their extent and duration, and the limitations they impose may be shown by the camera to be a fraud. The possibility that such pictures exist will often cause the most blatant liar to consider carefully the testimony he plans to give under oath.[1]

On the other hand, the camera may be an instrument of deception. It can be misused. Distances may be minimized or exaggerated. Lighting, focal lengths, and camera angles all make a difference. Action may be slowed down or speeded up. The editing and splicing of films may change the chronology of events. An emergency situation may be made to appear commonplace. That which has occurred once, can be described as an example of an event which recurs frequently. We are all familiar with Hollywood techniques which involve stuntmen and doubles. Thus, that which purports to be a means to reach the truth may be distorted, misleading, and false.

In discussing personal injury cases, most defense lawyers contend that if a plaintiff knows surveillance films exist, he will tailor what he has to say accordingly. For tactical reasons, therefore, they would prefer to have plaintiff testify and then let the jury see the films. Defendants contend that uncertainty as to the existence of surveillance pictures is the best way to promote truthfulness and the showing of such films in court, a proper way to penalize a plaintiff who has been dishonest.

Lawyers representing plaintiffs, on the other hand, argue that unless they can check the integrity of the photographer, the accuracy of his methods, and review the pictures he has taken, they are deprived of the proper means to cross-examine or seek rebuttal testimony. Thus, they maintain that the need to prevent possible abuse by defense investigators requires full disclosure as to the films in advance of trial and an opportunity for them to be seen.

Federal Rule of Civil Procedure No. 26 deals with the scope of discovery and provides that it may be obtained regarding any matter which is relevant and not privileged. Obviously films which would tend to show a plaintiff's physical condition, how he moves, and the restrictions which are his, are highly relevant—perhaps they will establish the most important facts in the entire case. The term "not privileged" undoubtedly refers to "privileges" as that word is understood in the law of evidence: Mitchell v. Roma, 265 F.2d 633, 636 (3rd Cir. 1959). Neither the qualification as to relevancy nor privilege[2] is applicable in this situation.

Surveillance motion pictures are obtained for use at trial. Rule 26(b)(3) provides a further limitation on discovery as to matters prepared in anticipation of litigation. First, the material in question must be unavailable by other means, and second, there must be a substantial need for it in the preparation of the case.

Of course, surveillance motion pictures are not available except from the one who took them. While in theory, the plaintiff may tell his attorney about his physical limitations and demonstrate

---

1. It is in the best interests of society that valid claims be ascertained and fabricated claims be exposed. Forster v. Manchester, 410 Pa. 192, 197, 189 A.2d 147 (1963).

2. The steps a client takes to protect its interests, such as investigating an accident or obtaining surveillance films, are not within the attorney-client privilege. On the other hand, a discussion between client and counsel about the films would be. The mental impressions, opinions, and evaluations of the films by an attorney would be exempt from discovery by Rule 26(b)(3).

what he can and cannot do, obviously such descriptions would be of fragmentary help in trying to know what a hidden camera had recorded at some unknown time. A man may know he cannot bend over without pain and therefore feel he is telling the truth when he says he never reaches down to touch the floor. Nonetheless, under some particular circumstances he may have done so and this may be the very incident which the camera has recorded. It follows that if there is "substantial need" to have knowledge of the films for the preparation of plaintiff's case, they must be made available to his attorney in advance of trial.

Every need to provide information must be balanced against the need to withhold it. The need to know is but the converse of the need to keep secret. The only time there will be a substantial need to know about surveillance pictures will be in those instances where there would be a major discrepancy between the testimony the plaintiff will give and that which the films would seem to portray. By the same token this would be the only instance where there is a substantial need to withhold that information from plaintiff's counsel. If the discrepancy would be the result of the plaintiff's untruthfulness, the substantial need for his counsel to know of the variance can hardly justify making the information available to him. On the other hand, if the discrepancy would result from misleading photography, the necessary background information should be made available to the plaintiff's attorney so the fraud can be exposed. It goes without saying that the means to impeach should not be the exclusive property of the defense. Any rule to be formulated, therefore, must balance the conficting interests of the plaintiff against the conflicting interests of the defendant and protect both insofar as it is possible to do so. In addition, the objectives of the discovery rules must be kept in mind so that a just and speedy determination of cases can be obtained.

I conclude these purposes can best be achieved by requiring the defense to disclose the existence of surveillance films or be barred from showing them at trial. If the defense has films and decides it wants to use them, they should be exhibited to the plaintiff and his counsel. If filed, supplementary interrogatories should be answered giving full information as to the details surrounding the taking of these pictures.

Before any of these disclosures, however, the defense must be given an opportunity to depose the plaintiff fully as to his injuries, their effects, and his present disabilities. Once his testimony is memorialized in deposition, any variation he may make at trial to conform to the surveillance films can be used to impeach his credibility, and his knowledge at deposition that the films may exist should have a salutary effect on any tendency to be expansive. At the same time, if the plaintiff believes that the films seem to give a false impression, he can then obtain the necessary data to serve as a basis for cross-examination.

For these reasons, I am directing that the interrogatories need not be answered until plaintiff has been deposed as to his injuries and disabilities. Thereafter, the interrogatories are to be answered and the films, if they exist and will be used at trial, are to be exhibited to the plaintiff. All this should take place as close to the time of trial as possible, but before the final pre-trial conference. The setting of a date for the conference should trigger plaintiff's being deposed and the answering of plaintiff's interrogatories.

Plaintiff has also asked that defendant be required to divulge information as to any other surveillance measures and any investigation which may have been made among plaintiff's acquaintances and neighbors. If surveil-

lance and inquiries of this type will result in testimony at trial, plaintiff should be given an opportunity to investigate those who investigated him. The details as to the surveillance and investigation, however, are another matter. Whatever testimony may result will have a less dramatic effect before a jury than would motion pictures, and I can see no substantial need for plaintiff's counsel to be informed of the times, dates, and results of investigatory work of this type.