**Booker BLYTHER**

v.

**NORTHERN LINES, INC. and Estancia Farmers' Cooperative Marketing Assn., Inc.**

v.

**I.T.O. CORPORATION OF AMERIPORT.**

**Civ. A. No. 70–3115.**

United States District Court,
E. D. Pennsylvania.

Oct. 1, 1973.

Marvin I. Barish, Philadelphia, Pa., for plaintiff.

Robert B. White, Jr., Philadelphia Pa., for defendant.

William C. Foster, Philadelphia, Pa., for third-party defendant.

## MEMORANDUM OPINION

BECHTLE, District Judge.

This matter is before the Court on plaintiff's motion for reconsideration of the Court's Opinion and Order of April 10, 1973, in the above matter.

The underlying question is the extent to which a party in a civil proceeding may secure, by discovery, surveillance films taken by and in the possession of his adversary. The United States District Court for the Eastern District of Pennsylvania, in the case of Snead v. American Export-Isbrandtsen Lines, Inc., 59 F.R.D. 148, decided, by a three-judge court made up of District Judges Donald W. VanArtsdalen, Daniel H. Huyett, 3rd, and J. William Ditter, Jr., that such materials are discoverable subject to the condition that disclosure is not required to be made until an opportunity is provided to the party possessing the material to ". . . depose the plaintiff fully as to his injuries, their effects, and his present disabilities." The District Court's opinion was filed on March 28, 1973.

The Court's Order in the within case was withheld until the three-judge court for our district ruled upon the underlying question, inasmuch as such a three-judge court ruling is considered to be the basic policy to be followed by the District Court in the event a similar question is raised in other cases which, of course, applies to the within case.

I do not believe that the Court's Order of April 10, 1973, in the within case is a deviation from the basic underlying policy established by the three-judge court on the matter of the discoverability of surveillance films.

The plaintiff believes that this Court deviated from the three-judge court decision in three respects, as follows:

■ (1) The Order in this case permits the plaintiff to discover the surveillance films in the possession of the defendant, which is the underlying holding of the Snead case. The plaintiff objects, however, because this Court did not restrict the condition of taking predisclosure depositions to the deposition of the plaintiff alone. I think this is too narrow a reading of the Snead case. In the Snead case, the opinion was directed to the particulars of that case; hence, the designation of the "plaintiff" as a person to be deposed. The underlying philosophy of predisclosure deposition is not that the "plaintiff" be deposed but that the deposition is to be taken of any person who will, when their testimony is

reduced to written form under oath, furnish the reasonable degree of protection to the certainty of the matters that the film depicts so that there will be no temptation, intentionally, or otherwise, to alter testimony following the viewing of the film in order to meet evidentiary disadvantages that may be suggested by what the film shows. An example of how restrictive the plaintiff's approach is on this point is clear when one considers that surveillance films may not bear upon the plaintiff's injuries, but could bear upon a claim for property damage, or on the issue of impairment of earning capacity, or conceivably many other issues. If the surveillance films would show a plaintiff performing certain occupational tasks that he contends he cannot perform regularly since the accident, would it not be reasonable for the defendant to take the deposition of the plaintiff's employer or supervisor to see the extent to which activities shown in films are regularly engaged in by the plaintiff? If the purpose of predisclosure depositions is to furnish reasonable certainty under oath to the events depicted on the film, I believe that the *Snead* policy opinion warrants the taking of those depositions, be it the plaintiff or otherwise, that will achieve that purpose. I think the Court's Order in the within case is in keeping with the *Snead* decision on that point. I am unwilling to assume that the defendant will abuse the authority afforded by the Order either by taking depositions unreasonably or in an oppressive manner. In the event that occurs, as in other cases, the plaintiff has appropriate remedy through the Federal Rules of Civil Procedure to seek protective measures or sanctions as necessary.

▮ (2) The plaintiff apparently misreads the Court's Order and takes the position that the Court has imposed an Order upon the plaintiff to pay over to the defendant the sum of $200 for the right to view the films. The Court's Order obviously does not require such a payment, but only requires the payment of such reasonable expenses *not to exceed $200* which may be incurred by the defendant in the predisclosure discovery and the disclosure process. The Court envisions in this regard that the defendant will minimize such costs and then file its petition with the Court, together with its supporting reasons and a prayer for an Order directing that such sum be deemed by the Court to be the amount to be paid under the Order. It may be $15; it may be $20; it may be nothing. The plaintiff can resist the approval of the award of the amount thereof on the ground that it was not necessary or reasonable under the circumstances and, if he is correct, payment would not be ordered. In respect to the payment of reasonable costs, the precedent under the Federal Rules of Civil Procedure at Rule 26(b)(4)(C), is that an expert hired by a party to perform for that party affirmatively, whether in support of a plaintiff's claim or in defense of a claim made against the defendant, is much the same kind of witness as is involved in the area of surveillance films, which the Court feels is sufficiently parallel to warrant consideration of the imposition of limited costs as embodied in its Order of April 10, 1973.

(3) Plaintiff raises the question that the imposition of such costs upon an individual plaintiff may, because of plaintiff's economic inability to pay, render him unable to prepare his case and thereby be denied his day in court. This point has merit, but there is nothing in the present record to suggest that the plaintiff in the within case is experiencing that phenomenon. Upon the filing of petition raising such issues, there are several terms available to Court. An example of one would be the postponement of the time for the payment of any costs found properly to be due until such time as the case is finally decided. Coupled with this, the Court could consider that whether or not the plaintiff would be liable for such costs

would abide the outcome of the case by settlement, a verdict, or otherwise. The Court cannot consider these other possible alternatives in a vacuum and, while these represent only two possible examples of meeting plaintiff's objection in this regard, there are no doubt other alternatives that are equally reasonable but cannot be fashioned by the Court until the issue is squarely raised by the moving papers by an allegedly aggrieved party.

For all the foregoing reasons, plaintiff's motion for reconsideration will be denied.