**Golato v. Gillespie**

*Donald Manchel,* for plaintiff.
*Harry Atkins,* for defendant.

SHIOMOS, *J.,* February 28, 1975—The question before the court is whether plaintiff shall be allowed to make discovery of any surveillance conducted of him by defendant or anyone on his behalf. We today answer affirmatively that such discovery shall be allowed.

The following interrogatories were served by plaintiff upon defendant:

"1. State whether you, your attorney, or an agent(s) servant(s) employee(s), of either or both of yours, conducted any sound, photographic, motion picture film, personal sight or any other type of surveillance of the plaintiffs herein, or either of them.

"2. If so, state the name, address and telephone number of the individual(s) who made such surveillance.

"3. State as to such surveillance(s), (a) the date(s); (b) the time(s); (c) by whom; (d) where; (e) how such surveillance(s) was (were) made.

"4. State the results of such surveillance(s).

"5. State whether by you, or your attorney, or any agent(s), servant(s), employee(s), of either of you, made any photographs of plaintiff(s) herein.

"6. If so, state in detail (a) by whom taken, giving name, address, telephone number, employer and upon whose direction and/or control; (b) how taken; (c) when taken; (d) where taken; (e) the manner in which they were taken.

"7. State whether by you, or your attorney, or any agent(s), servant(s), employee(s), of either of you, took any motion pictures of plaintiff(s) herein.

"8. If so, state in detail; (a) by whom taken, giving name, address, telephone number, employer,

and upon whose direction and/or control; (b) how taken; (c) where taken; (d) when taken; (e) the manner in which they were taken.

"9. State whether by you, or your attorney, or any agent(s), servant(s), employee(s), of either of you, made any sound recordings of plaintiff(s) herein.

"10. If so, state in detail: (a) by whom made, giving name, address, telephone number, employer and upon whose direction and/or control; (b) where taken; (c) how taken; (d) when taken; (e) the manner in which they were taken."

Rather than answer the interrogatories, defendant filed a responsive pleading as follows:

"Defendant objects to plaintiff's interrogatories numbered: 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10, inasmuch as they are [in] violation to the Pennsylvania Rules of Civil Procedure 4007 and 4011."

Plaintiff thereupon filed a motion to strike defendant's objections and asserted in support thereof two grounds. The first was that the form of defendant's objection was improper, and therefore his right to object was waived.

Within ten days, defendant filed, along with his answer to plaintiff's motion, an amended pleading in which his objections to each interrogatory were individually and specifically made. The amended objections were timely filed by defendant in response to plaintiff's motion, and cured any procedural defects.

The decision we now come to is whether there is any creditable support for defendant's objection. We rule in favor of plaintiff and order defendant to answer the interrogatories because all attempts to discover meritorious bases for the objections were unsuccessful.

This case presented a question of first impression

in our courts. Contrary to the arguments of defendant, this does not mean that our courts have always found against this issue whenever previously raised, but that "it presents an entirely novel question of law for the decision of the Court, and cannot be governed by any existing precedent.": Black's Law Dictionary, p. 763 (1968). Defendant, in fact, cites no Pennsylvania case on the issue and after an exhaustive search the court has been unable to discover any. Plaintiff, however, has cited to us the recent federal case of Snead v. American Export-Isbrandtsen Lines, Inc., 59 F.R.D. 148 (1973), in support of his motion. Defendant disagrees with plaintiff's interpretation of Snead, but offers no alternative interpretation and after a careful reading we are convinced that Snead is right on point.

While we find Snead persuasive, defendant is correct, however, when he argues that it is not controlling. Before the discovery could be allowed, it had to first be determined that it was not prohibited by Pennsylvania law.

The scope of written interrogatories used in pretrial discovery is limited by Pa. R.C.P. 4005 and 4007 to ". . . any matter, not privileged, which is relevant to the subject matter involved in the action and will substantially aid in the preparation of the pleadings or the preparation or trial of the case.": Pa. R.C.P. 4007(a). In construing this language, we must accommodate Rule 4011 (a) thru (c) which forbids discovery which "is sought in bad faith; causes unreasonable annoyance . . . or relates to any other matter which is privileged."

Our rules, therefore, do not explicitly decide the issue presented here, but as our Supreme Court points out, they do provide the following guidance: (1) the material must be relevant to the subject matter involved in the action; (2) the material must substantially aid in the preparation or trial of the

case; (3) the material must not be privileged, or otherwise prohibited by Rule 4011: Szarmack v. Welch, 456 Pa. 293, 296, 318A. 2d 707, 709 (1974).

As the basis for his objections, defendant has recited verbatim the limitations of Rule 4011 in its references to "bad faith," "unreasonable annoyance," "privilege" and "embarrassment, expense and oppression." Defendant fails to demonstrate how plaintiff's interrogatories violate Rule 4011. Such is insufficient as a matter of law to provide the basis for upholding objections to interrogatories.

Discovery sought under the Rules of Civil Procedure will not be presumed to fall within the ban of Rule 4011, and one relying on such an objection has the burden of showing the validity of the objection: Kolansky v. Hills, 34 D. & C. 2d 751 (1964); Kaylor v. Baran, 5 D. & C. 2d 567 (1956); Minichino v. Quakertown Borough, 88 D. & C. 83 (1954). See Lippincott v. Graham, 3 Bucks 16 (1953).

As to the limitation of Rule 4011(a), it has been said that bad faith should not be imputed to the inquirer unless it is apparent that the questioning is of an irrelevant, immaterial or scandalous character: Pottstown Lincoln Mercury, Inc. v. Montgomery County Auto Sales, Inc., 2 D. & C. 2d 396 (1954). The authorities have pointed out, moreover, that because of its indefiniteness, flexibility of meaning and easy availability as a means for stifling discovery, thereby perverting the intent of the rules, the "bad faith" provision is potentially dangerous. We are warned that it must be carefully and sparingly used so as to never perpetrate injustice by forbidding proper discovery: 4 Goodrich-Amram, sec. 4011(a)-1.

The defense of unreasonable annoyance, embarrassment and expense under Rule 4011(b) is not made out by a showing of the usual annoyance,

embarrassment and expense which is attendant upon any discovery: Pottstown Lincoln Mercury Inc., supra. The mere existence of some annoyance, embarrassment or oppression, or the mere imposition of some expense is not ground to forbid discovery or inspection. See Mackowain v. Gulf Oil Corp., 13 Monroe 109 (1951), appeal dismissed as premature, 369 Pa. 581, 87 A. 2d 314 (1952); Dorfman v. Phila. Transportation Co., 79 D. & C. 380 (1952), c.f. Fed. R. Civ. P. 30(d); Canuso v. City of Niagara Falls, 7 F.R.D. 159 (W.D.N.Y. 1945); Application of Zenith Radio Corp., 1 F.R.D. 627 (E.D. Pa. 1941); Goldberg v. Raleigh Manufacturers, Inc., 28 F. Supp. 975 (D. Mass. 1939).

Despite the lack of any presumptions upon which defendant may rely and his failure to show how plaintiff's interrogatories violate Rule 4011, the court did not feel the issue should be "defaulted" in favor of plaintiff and therefore undertook to make an independent analysis of the application of Rules 4007 and 4011 and their limitations on the discovery sought in this case. Any objections based upon Rule 4001(a), (b), (e) or (f) can be dispensed with summarily. After a thorough review of cases and authorities and a careful consideration, the court has been unable to conceive of any meritorious argument in defendant's favor that may be asserted pursuant to these sections. Resolution of the remaining issues limiting discovery led to our decision herein.

The obvious impetus compelling the expenditure of time and money on secret surveillances of a plaintiff is to impeach his credibility. As correctly pointed out in Snead:

"Films taken without the knowledge of the subject often have a dramatic impact in Court. One who has described in elaborate detail his dis-

abilities, their extent and duration, and the limitations they impose may be shown by the camera to be a fraud. The possibility that such pictures exist will often cause the most blatant liar to consider carefully the testimony he plans to give under oath.": 59 F.R.D. at 150.

Our own Supreme Court correctly advises us that it is in the best interests of society that valid claims be ascertained and fabricated claims be exposed: Forster v. Manchester, 410 Pa. 192, 197, 189 A. 2d 147 (1963).

We cannot ignore, however, the deceptive characteristics of surveillance evidence and the possible misuse inherent therein:

"Distances may be minimized or exaggerated. Lighting, focal lengths, and camera angles all make a difference. Action may be slowed down or speeded up. The editing and splicing of films may change the chronology of events. An emergency situation may be made to appear commonplace. That which occurs once, can be described as an example of an event which occurs frequently. We are all familiar with Hollywood techniques which involve stuntmen and doubles. Thus, that which purports to be a means to reach the truth may be distorted, misleading and false.": Snead, supra, at 150.

Defense attorneys are understandably concerned that if a plaintiff has knowledge of the results of a surveillance, his testimony will be tailored accordingly. Smart trial tactics dictate their preference to let a jury see the results of a surveillance after a plaintiff has testified. It is contended that "uncertainty as to the existence of surveillance . . . is the best way to promote truthfulness and the showing of such films in court, a proper way to penalize a plaintiff who has been dishonest.": Snead, supra at 150.

Plaintiff's attorney is equally aware of how immeasurably large is the dramatic impact of surveillance results, such as films, upon a jury. To be "surprised" with such evidence at trial may present such a devastating blow that the influence can never be overcome. Without sufficient opportunity to check the integrity of the investigator, the accuracy of his methods and review the results, they argue, they are deprived of the proper means to cross-examine or seek rebuttal testimony. They contend that pretrial disclosure and review of surveillance evidence is the only way to prevent possible abuse by defense investigators.

These were the competing values that had to be weighed by the court in Snead. Their ultimate determination, moreover, had to be made by reviewing these arguments subject to the same limitations of privilege, relevancy and need for its aid in the preparation of the trial. We agree with their decision that none of these limitations bars the discovery sought by plaintiff.

Surveillance evidence regarding the physical condition and its external effect on plaintiff are highly relevant, as they relate to the essential facts of a claim for damages. The very need prompting defense counsel to expend such time, effort and money to conduct a surveillance establishes, ipso facto, the relevancy of the results of such surveillance. Despite the relevancy of the evidence, however, it cannot be obtained if it is protected by some privilege. A review of Pennsylvania authorities and cases contained therein leads us to the conclusion reached in Snead that "privilege" is used as it is understood in the law of evidence. We can find no such privilege that would apply. If one exists of which we are not aware, it would obviously have to be waived if the evidence is used at trial. We reject such a sporting theory of discovery. Neither the

qualification as to relevancy nor privilege is applicable in this situation: Snead, supra at 150.

The limitation placed upon discovery of evidence secured in anticipation of litigation or prepared in preparation of trial is subject itself to the limitations that the evidence must be unavailable by other means and second, there must be a substantial need for it in preparation of trial.

Surveillance evidence cannot be obtained from any source other than the one who conducted the surveillance, or the party in whose control he remains. Secondly, the isolated activity performed with excruciating but unrevealed pain may be the very incident revealed to the jury with devastating impact. As Snead counsels:

"While in theory, the Plaintiff may tell his attorney about his physical limitations and demonstrate what he can or cannot do, obviously such descriptions would be of fragmentary help in trying to know what a hidden . . . (surveillance) . . . recorded at some unknown time. A man may know he cannot bend over without pain and therefore feel he is telling the truth when he says he never reaches down to touch the floor. Nonetheless, under some particular circumstances he may have done so and this may be the very incident which . . . has (been) recorded.": Snead, supra, at 150 and 151.

The substantial need to have knowledge of surveillance evidence for preparation of plaintiff's case is obvious and discovery thereof is permissible.

We find no impediment to our admittedly heavy reliance on the Snead decision. Being thoroughly familiar with both Pennsylvania practice and federal practice, the court takes judicial notice of the striking similarity between the two. The trend of our own rules of discovery, furthermore, beginning

with the 1954 amendments and proceeding through to the present day, have evolved through language and case decision in a manner designed to bring them into conformity with the federal rules of discovery. The purpose of our present discovery rules, moreover, is to eliminate the element of surprise as to evidence presented at trial: 4 Goodrich-Amram sec. 400. In the final analysis, we render our decision with the view that the discovery we permit will foster the general objectives set forth in our procedural rules: Szarmack v. Welch, 456 Pa. 293, 318 A. 2d 707 (1974).

## ORDER

And now, February 28, 1975, it is hereby ordered and decreed that plaintiffs' motion to strike defendant's objections to interrogatories is hereby granted and defendant is ordered to answer said interrogatories within 20 days from the date hereof, or not be allowed to introduce evidence or enter a defense at time of trial.