**Edna FRAZIER, Plaintiff,**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Defendant.**

No. 94–CV–4957.

United States District Court, E.D. Pennsylvania.

May 22, 1995.

Bruce L. Neff, Neff & Associates, Philadelphia, PA, for plaintiff.

John M. Phelan, Richard C. Biedrzycki, Phillips and Phelan, Philadelphia, PA, for defendant.

*MEMORANDUM AND ORDER*

JOYNER, District Judge.

This Memorandum and Order addresses five outstanding discovery motions filed in this increasingly contentious action. The first two motions include a motion for a protective order filed pursuant to Fed. R.Civ.P. 26(c) by the plaintiff, Edna Frazier, as well as Defendant's motion to compel the deposition of Plaintiff's attorney, Bruce L. Neff, and for sanctions. The issue in both motions concerns whether the defendant, Southeastern Pennsylvania Transportation Authority ("SEPTA"), should be permitted to depose Mr. Neff. The remaining motions include: (1) SEPTA's motion to compel the re-deposition of Ms. Frazier and for sanctions; (2) Ms. Frazier's motion to compel compliance with her discovery request; and

(3) Ms. Frazier's motion to extend the discovery deadline. All of the motions are opposed. For the reasons that follow, Ms. Frazier's motion for a protective order will be denied, while SEPTA's motion to compel the deposition of Mr. Neff will be granted. Further, SEPTA's motion to compel the re-deposition of Ms. Frazier and for sanctions will be granted and Ms. Frazier's motion to compel discovery will be granted in part.[1] Finally, we will extend the discovery deadline by twenty-one days.

## I. BACKGROUND

On April 17, 1985, more than ten years ago, Ms. Frazier was a passenger on a SEPTA bus that was involved in a traffic accident. Ms. Frazier subsequently initiated a personal injury claim against SEPTA in the Philadelphia County Court of Common Pleas seeking damages for injuries allegedly sustained as a result of the incident. Ms. Frazier was represented by Mr. Neff during the course of this litigation, which resulted in a verdict for SEPTA. Ms. Frazier, again represented by Mr. Neff, later initiated this lawsuit in which she alleges that SEPTA utilized surveillance equipment to monitor Ms. Frazier's actions as part of its effort to present a defense in the underlying tort case. She contends that SEPTA maintains a policy, practice and custom of engaging in "intentionally unsettling and intrusive surveillance" of injured claimants in order to discourage claims and punish those who bring claims against SEPTA. Moreover, she alleges that SEPTA conducted the surveillance even though it knew of her fragile mental state,[2] with the intent to render her incompetent to testify at the trial. In so doing, Ms. Frazier

asserts that SEPTA violated a number of rights guaranteed to her by the constitution and federal law.[3]

## II. DISCUSSION

### A. Plaintiff's Motion for a Protective Order and Defendant's Motion to Compel

SEPTA seeks to depose Mr. Neff. It is convinced that Mr. Neff possesses non-privileged information relevant to its defense. Specifically, it intends to question Mr. Neff concerning the tort case, including attempts to schedule examinations of Ms. Frazier that were canceled by Mr. Neff, discussions between Mr. Neff and others relating to the nature of the surveillance, Mr. Neff's personal presence when the surveillance was occurring, and other related matters. Thus, on February 22, 1995, SEPTA served a notice of the taking of the deposition of Mr. Neff.

The very next day, on February 23, Ms. Frazier filed a motion for a protective order seeking to prevent Mr. Neff's deposition. In her motion, Ms. Frazier argued that SEPTA had failed to show that some special need was present warranting the deposition of Mr. Neff, and that the possibility of Mr. Neff becoming a witness raised the prospect of his disqualification, which would operate as a hardship on Ms. Frazier. Ms. Frazier failed to confer with SEPTA prior to filing her motion in an attempt to resolve it without court action, as the Federal Rules require.[4] Thus, on March 17, 1995, we issued an Order denying Ms. Frazier's motion because of her failure to comply with Fed.R.Civ.P. 26(c) and Local Rule 24(f). Both parties filed motions

---

1. Ms. Frazier has also submitted a request to file a supplementary briefing with respect to her motion to compel. In light of our resolution of her motion, however, we will deny the request.

2. Ms. Frazier appears to suffer from paranoia. For example, her testimony reflects her belief that SEPTA has implanted electronic bugging devices in her mouth, rectum, vagina, foot, nose and ears. Frazier depo. at p. 20.

3. Ms. Frazier's amended complaint raised causes of action in intentional and negligent infliction of emotional distress, fraud and deceit, and a count seeking punitive damages, as well as a claim seeking compensation for the alleged violations

of her federal civil rights under 42 U.S.C. § 1983. In a Memorandum and Order dated December 1, 1994, this Court dismissed all of the state law claims, leaving SEPTA to defend only the civil rights claim. *Frazier v. Southeastern Pennsylvania Transp. Auth.*, 868 F.Supp. 757 (E.D.Pa.1994).

4. *See* Fed.R.Civ.P. 26(c) (requiring that the motion for a protective order be "accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action").

in the wake of our March 17 Order: Ms. Frazier has filed a second motion for a protective order, in which she raises the same arguments as she presented in her first motion, while SEPTA has submitted a motion to compel Mr. Neff's deposition and for sanctions. We address these motions together, since they both involve the issue of SEPTA's right to depose Mr. Neff.[5]

### 1. *Applicable Standard*

■ Any material that is relevant to the subject matter involved in the action is discoverable as long as it is not privileged. Rule 26(b)(1). This Court is empowered, however, to issue an order to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense," if there is good cause to issue such an order. Fed.R.Civ.P. 26(c). In this circuit, the party seeking the protective order bears the burden of showing that it is particularly needed to obviate a significant harm; broad allegations of harm will not suffice. *Trans Pacific Ins. Co. v. Trans–Pacific Ins. Co.*, 136 F.R.D. 385, 391 (E.D.Pa.1991) (citing *Cipollone v. Ligget Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987)); *Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 352–53 (D.N.J. 1990).

■ The cases make it clear that Ms. Frazier is not entitled to a protective order merely because SEPTA seeks to depose her attorney. This court has previously recognized that "[t]he fact that the proposed deponent is an attorney for one of the parties in the case is clearly not enough, by itself, to justify granting in full the motion for a protective order." *In re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 429, 437 (E.D.Pa.1981); *see Johnston*, 130 F.R.D. at 352 (no general rule prohibiting the deposition of opposing counsel regarding relevant, non-privileged information); Rule 30(a)(1) (providing that "[a] party may take the testi-mony of *any person,* including a party, by deposition upon oral examination without leave of court...." (emphasis added)). Thus, we may grant Ms. Frazier's request for a protective order only if she establishes undue burden or oppression measured by (1) the extent to which the proposed deposition promises to focus on central factual issues, rather than peripheral concerns; (2) the availability of the information from other sources, viewed with an eye toward avoiding cumulative or duplicative discovery; and (3) the harm to the party's representational rights resulting from the attorney's deposition. *Johnston*, 130 F.R.D. at 353.

### 2. *Analysis*

■ Upon consideration of the first factor, we conclude that the subject matter of proposed deposition directly relates to Ms. Frazier's claim. As we noted above, the nub of this matter is that SEPTA's surveillance of Ms. Frazier in defense of the previous claim violated some federally-protected right. SEPTA seeks to question Mr. Neff with respect to his knowledge of the nature and extent of the surveillance conducted, discussions he undertook with various persons regarding the surveillance, Mr. Neff's knowledge of potential witnesses to the surveillance, and other related issues.[6] These various lines of questioning are all directly relevant to Ms. Frazier's case. As a result, we conclude that this factor militates in favor of allowing the deposition to go forward.

With respect to the second factor, Mr. Neff contends that a protective order is warranted because SEPTA has not made a showing that the information it seeks is unavailable from other sources. Indeed, Mr. Neff has submitted an affidavit in which he attests that he possesses no direct knowledge regarding the information SEPTA seeks. As we noted above, however, SEPTA is under no duty to show that the information is available only from Mr. Neff. Rather, the onus is on Ms. Frazier to show that the information is so

---

5. While we recognize that we could simply deny Plaintiff's motion for a protective order on the grounds that we have already issued a ruling on the previous motion, we address the merits of the arguments here to provide the parties with a full understanding of the Court's rationale.

6. We mention these lines of questioning as a means of explaining the Court's rationale, and not to define the scope of appropriate inquiry regarding Mr. Neff's deposition.

readily available from other sources that an order compelling Mr. Neff's deposition would be oppressive.[7] *Id.* Here, Ms. Frazier has made no such showing. Indeed, the record reflects that Mr. Neff possesses information regarding, among other things, the time and means by which Ms. Frazier became aware of the surveillance, his affidavit notwithstanding. Thus, we conclude that Plaintiff has failed to meet her burden concerning the alternative availability of the information.

Finally, we address the most serious issue involved regarding the propriety of allowing the deposition a party's attorney to go forward: the resulting harm to the party's representational rights. In this regard, Mr. Neff argues, on Ms. Frazier's behalf, that his deposition raises the prospect of his becoming a witness at trial, which in turn raises the possibility of his disqualification. He further argues that his disqualification would operate as a particular hardship on Ms. Frazier, since he and Ms. Frazier have cultivated and developed a unique bond of trust over the course of their eight-year relationship. We reject this argument, however, because of the flimsy nature of its premise: whether Mr. Neff is compelled to testify at trial depends not on whether his deposition is taken, but on the nature of the information he possesses. Moreover, even if, as Mr. Neff argues, disqualification would work a particularly severe hardship on Ms. Frazier, the Court is empowered to deny a disqualification motion on such grounds. *See* Pennsylvania Rule of Professional Conduct 3.7(a) (providing that a witness-attorney may not act as an advocate at trial except when, among other circumstances, "disqualification of the lawyer would work substantial hardship on the client"). Finally, we note that this issue was completely foreseeable at the time Mr. Neff filed this action on Ms. Frazier's behalf. Indeed, Mr. Neff himself has indicated his intention to depose the attorneys who represented SEPTA in the underlying tort suit. Thus, for these reasons, we conclude that Mr. Neff's

deposition will not substantially harm Ms. Frazier's representational rights.

■ Accordingly, we will deny Ms. Frazier's second motion for a protective order and grant SEPTA's motion to compel Mr. Neff's deposition. Pursuant to Rule 37(a)(4), we are thus compelled to require Mr. Neff and/or Ms. Frazier to reimburse SEPTA for the costs and expenses associated with its motion to compel, including a reasonable attorney's fee, unless the "objection was substantially justified" or "other circumstances make an award of expenses unjust." Given the seriousness of the issue of a party's attorney's deposition, we conclude that Mr. Neff's opposition to efforts to compel his deposition was, while ultimately unconvincing, not completely without basis in the law. As a result, we decline to order Mr. Neff to pay Rule 37 sanctions. Thus, our Order will compel Mr. Neff to appear for his deposition at a mutually convenient time, but will not contain an award of costs and expenses.

### B. Defendant's Motion to Compel Re-deposition of Plaintiff and for Sanctions

■ Ms. Frazier was deposed by attorneys representing SEPTA on March 14, 1995. SEPTA has since filed this Motion to Compel a Re-deposition, in which it contends that Mr. Neff improperly suggested answers, coached the witness, and prevented his client from responding to proper questions during the course of the deposition. SEPTA also argues that Mr. Neff's behavior warrants the imposition of sanctions. Mr. Neff contends that he was merely attempting to keep the witness focused on the precise questions posed. Moreover, Mr. Neff claims that he prevented Ms. Frazier from answering only those questions outside the scope of discovery.

Rule 30(d)(1) governs the extent to which a deponent may be instructed not to answer certain questions, providing as follows:

Any objection to evidence during a deposition shall be stated concisely and in a non-

---

**7.** Thus, Plaintiff's assertion that "[u]nless and until SEPTA can point to hard information known only to Mr. Neff concerning SEPTA's ... surveillance and how the surveillance invaded Plaintiff's rights, SEPTA should not be allowed to depose Plaintiff's trial counsel," Plaintiff's Memo. in Opposition to Motion to Compel at 3, manifests a patent misunderstanding of applicable law.

argumentative and non-suggestive manner. A party may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a motion under paragraph (3).

Fed.R.Civ.P. 30(d)(1). Further, Rule 37 empowers the court to order a party to respond to a question, or provide a more complete response to a question. Thus, Rules 30 and 37 animate the rule to which this Court adheres regarding a lawyer's participation during a deposition:

> A deposition is meant to be a question-and-answer conversation between the deposing lawyer and the witness. There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers. The witness comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record. It is the witness—not the lawyer—who is the witness.

*Hall v. Clifton Precision,* 150 F.R.D. 525, 528 (E.D.Pa.1993). Thus, we held that there is no right for a lawyer and witness to confer during the course of the deposition, noting that once the deposition begins, the "witness is on his or her own." *Id.* Finally, we addressed the issue of lawyers who provide suggested answers to their clients in the manner in which they object to the questions. We concluded that "lawyers are strictly prohibited from making any comments, either on or off the record, which might suggest or limit a witness's answer to an unobjectionable question." *Id.* at 531.

Upon review of the transcript of Ms. Frazier's deposition, we find Mr. Neff's violations of these established prescriptions to be numerous, blatant, and indicative of a willful attempt to obfuscate the truth-seeking process. In one such instance, SEPTA's counsel attempted to question Ms. Frazier regarding the time she first visited her psychiatrist, Dr. Saul. Mr. Neff improperly interrupted the questioning and suggested answers to his client. The exchange proceeded as follows:

> MR. BIEDRZYCKI (SEPTA's counsel): Let me ask it this way, when you went to see Dr. Saul for the first time, do you remember the route you took to get there, how you got there?
>
> MS. FRAZIER: Uh-uh.
>
> MR. NEFF: What is the answer?
>
> MR. BIEDRZYCKI: You have to say yes or no.
>
> MS. FRAZIER: I'm trying to think if that was the time I was assaulted on SEPTA because I was in route to the place then.
>
> MR. NEFF: The question is do you remember how you got to see Dr. Saul the first time you went there? Do you remember the route? That's the question. Do you know the answer?
>
> THE WITNESS: (Witness nods.)
>
> MR. NEFF: You shook your head no. Does that mean no?
>
> THE WITNESS: No, I don't know.
>
> MR. NEFF: Fine. That's the answer. Now let him ask another question.
>
> THE WITNESS: I don't know the answer to that, but I do know that—
>
> MR. NEFF: That's the answer to the question.
>
> MR. BIEDRZYCKI: No, she hasn't answered the question. You've been answering for her. She has not answered the question.
>
> MR. NEFF: That's the answer to the question. Let him ask another question.

Frazier depo. at 67–68. Later, SEPTA's counsel pursued a line of questioning concerning Ms. Frazier's awareness of the surveillance, as follows:

> MR. BIEDRZYCKI: Specifically did you observe anybody following you, watching you or videotaping you as you came or went from an attorney's office?
>
> MR. NEFF: She's already indicated on—
>
> MR. BIEDRZYCKI: She did not answer my question.
>
> MR. NEFF: —on about 50 different occasions that she has a sense that she is constantly being observed anytime she is out public.

MR. BIEDRZYCKI: You can argue that to the jury, Mr. Neff. I'm asking for simple facts and trying to get some information from the witness.

MR. NEFF: She said that on many, many occasions. She just gave you that answer again.

MR. BIEDRZYCKI: She hasn't answered the question.

MR. NEFF: If you want to ask her anything other than that, that's fine, but she's told you that.

MR. BIEDRZYCKI: I'll ask until I get an answer to the question I asked. I don't want to get an answer to something I haven't asked.

MR. NEFF: Fine, I'm going to instruct her not to answer. She's answered your question three of four times and she's given that answer about 50 times during the course of the deposition.

Frazier depo. at 145–46. These are but two of the many instances during the deposition that illustrate Mr. Neff's patent violation of both the Federal Rules of Civil Procedure and the guidelines set forth by this Court in *Hall.* Mr. Neff repeatedly interrupted the deposition, suggesting answers to the witness, cutting short the witness's responses to questioning, and instructing the witness, without basis, not to answer certain questions.[8]

In defense of his behavior, Mr. Neff raises two arguments. The first is that Ms. Frazier's mental state is so suspect that it fell upon Mr. Neff to keep the plaintiff "focused" during the deposition. In support of this argument, Mr. Neff cites to a number of instances during the deposition where he attempted to narrow Ms. Frazier's responses to the question posed. The following example is typical:

MR. BIEDRZYCKI: When was the accident?

MS. FRAZIER: April 17, 1985.

MR. BIEDRZYCKI: So it was after that that this all started?

MS. FRAZIER: Crystalline cubic helmet in my eyes where the implants are, implants are put in my optic nerves are pulled up at wish, at will. I only see them. They pull it up at will with equipment. Nobody else sees them.

MR. NEFF: You're not answering his question.

MS. FRAZIER: I'm angry about it.

Frazier Depo. at p. 22. Two difficulties plague this line of argument. The first is that it does nothing to debunk SEPTA's assertion that Mr. Neff, on many other occasions, interrupted Ms. Frazier for the purpose of improperly molding her testimony. Moreover, the Federal Rules simply do not provide for such an exception. *See Hall*, 150 F.R.D. at 529 (noting that "the deposing lawyer is entitled to pursue the chosen line of inquiry without interjection by the witness's counsel"). Thus, even if Mr. Neff interspersed instruction with only the best of intentions, his conduct would still be violative of the Federal Rules.

■ Mr. Neff also contends that a number of his objections were within a recognized exception to the general rule that allows a deponent's lawyer to instruct a witness not to answer in order "to enforce a limitation on evidence imposed by the court." Rule 30(d)(1). On February 17, 1995, this Court issued an Order in which we limited discovery to the issue of whether the alleged surveillance deprived Ms. Frazier of a federally protected right. Mr. Neff argues that he instructed Ms. Frazier not to answer those questions which, in his view, exceeded the scope of our Order. Specifically, Mr. Neff would not permit his client to answer questions concerning: (1) Ms. Frazier's efforts to cancel medical examinations, which Ms. Frazier alleges were scheduled as a pretext to conduct surveillance of Ms. Frazier; (2) testimony Ms. Frazier may have offered at a hearing regarding social security benefits; and (3) Ms. Frazier's visits to other lawyers.

Upon careful review of the deposition testimony, however, we find Mr. Neff's objections meritless. The first line of inquiry relates to

---

**8.** Moreover, the Court looks with extreme disfavor upon Mr. Neff's use of profanity during the deposition. Depo. at p. 65. Such language has no place in any legal proceeding, and reflects quite poorly on Mr. Neff's professional fitness.

Ms. Frazier's allegation that the medical examinations were scheduled as a pretext to conduct surveillance. The second relates SEPTA's motive in conducting the surveillance; that is, whether the surveillance was conducted in order to prey upon Ms. Frazier's precarious mental state, as Ms. Frazier has alleged. Finally, the third line of inquiry is germane to Mr. Neff's contention, which he raised in his motion for a protective order, that he is the only lawyer who is able to represent Ms. Frazier adequately. Thus, we conclude that SEPTA was and is entitled to pursue each of these lines of questioning.

Accordingly, we will grant SEPTA's motion to compel the re-deposition of Ms. Frazier.[9] As a result, we are compelled to

> require the party or deponent whose conduct necessitated the motion or the party of attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that ... the opposing party's nondisclosure, response, or objection was substantially justified.

Rule 37(a)(4)(A). As we described above, we find that Mr. Neff bears the exclusive responsibility for the conduct which necessitated the filing of the motion. Moreover, we can identify no legitimate justification for his frequent interruptions and objections. Thus, we will order him to compensate SEPTA for the costs and attorney's fees associated with the filing of this motion to compel.

## C. *Plaintiff's Motion to Compel Discovery*

■ This dispute over discovery centers on requests for the production of documents relating to any surveillance of Ms. Frazier

conducted by or on the behalf of SEPTA, particularly surveillance conducted by J.R. Gettier, Inc. ("Gettier").[10] SEPTA has not produced the surveillance reports prepared by Gettier. Moreover, citing the work product privilege, SEPTA has refused to produce the following documents: (1) handwritten comments and notations of SEPTA's attorneys on any reports prepared and submitted to SEPTA by Gettier; (2) notes and memoranda by and between SEPTA's attorneys relating to Gettier's reports; (3) a portion of SEPTA's "Invoice Browsed by Claimant's File Number" report reflecting the amounts of invoices, as well as the portions referring to vendors other than Gettier; (4) SEPTA's attorneys' daily diaries; (5) SEPTA's attorneys' notes and memoranda concerning and/or containing their mental impressions, conclusions, opinions, theories, thought processes, evaluations, settlement value and recommendations; (6) notes and memoranda concerning intra-office conferences between and among SEPTA's attorneys; (7) SEPTA's attorneys' preliminary analysis and opinion containing SEPTA's attorneys' thoughts regarding the previous action; and (8) a letter from a SEPTA attorney to Gettier regarding a bill which contains work product. Finally, SEPTA has refused to produce intra-office memoranda and guidelines prepared by SEPTA's counsel regarding the general employment and use of videotaping and surveillance.

The work product privilege is set forth in Rule 26(b)(3), which provides, in pertinent part, as follows:

> Subject to the provisions of subdivision (b)(4) of this rule [relating to expert witnesses], a party may obtain discovery of documents and tangible things otherwise

---

9. Of course, when Ms. Frazier's re-deposition occurs, we will expect Mr. Neff to conduct himself in a manner consistent with this Memorandum and Order, the requirements of the Federal Rules, the guidelines we set forth in *Hall*, and the high standard of professionalism and personal decorum expected of an attorney and officer of the Court.

10. At issue are Plaintiff's Interrogatory and Request for Production Nos. 4 and 5, which read as follows:

> 4. Identify and produce all documents, memoranda, bills and billing records, correspon-

dence, phone logs, written investigation reports and tapes which concern or reference surveillance of Plaintiff caused or instigated by SEPTA by J.R. Gettier, Incorporated, or its agents, servants, employees or workers, including but not limited to Gettier Cases No. 91–0746 and 92–0746.

> 5. Identify and produce all documents, memoranda, bills and billing records, correspondence, phone logs, written investigation reports and tapes which concern or reference surveillance of Plaintiff caused or instigated by SEPTA by whomever or whatever created.

discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has a substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3). Thus, the rule recognizes two forms of "work product." The more unreachable type is opinion work product, which includes "such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses," and is normally accorded an absolute protection from discovery. *Sporck v. Peil,* 759 F.2d 312, 316 (3d Cir.), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985); *Rhone–Poulenc Rorer, Inc. v. Home Indem. Co.,* 139 F.R.D. 609, 614 (E.D.Pa.1991). Ordinary work product, on the other hand, consists of items prepared in anticipation of litigation, and is discoverable if the moving party makes a showing of substantial need and undue hardship. *Sporck,* 759 F.2d at 316. Thus, since different standards pertain, a proper analysis of the issues presented requires us to examine separately the requests to compel the discovery of the ordinary and opinion work product Ms. Frazier seeks.

### 1. *Ordinary Work Product*

■ The ordinary work product Ms. Frazier seeks includes the Gettier surveillance report and redacted invoices evidencing Gettier's work for SEPTA. Ms. Frazier argues persuasively that she is entitled to discovery of these materials. As noted above, the gravamen of Ms. Frazier's case is that SEPTA, with knowledge of Ms. Frazier's fragile mental state, engaged in intrusive and unsettling surveillance of her, thereby violating her federally protected civil rights. Thus, she has a particular, compelling need for the Gettier reports: to acquire information as to the manner in which the surveillance was conducted. Moreover, it appears Ms. Frazier is not in possession of a complete set of reports. For these reasons, we conclude that preventing Ms. Frazier's access to these materials would work as a substantial hardship to her.

■ SEPTA does not appear to challenge this conclusion. Indeed, it has agreed to produce these materials after it deposes Ms. Frazier and Mr. Neff. In support of its refusal to produce the materials presently, SEPTA cites *Snead v. American Export–Isbrandtsen Lines, Inc.,* 59 F.R.D. 148 (E.D.Pa.1973), and the cases that follow it. In *Snead,* we were confronted with a plaintiff in a personal injury lawsuit who sought discovery of surveillance materials that the defendant intended to use in its defense. In reaching a decision as to the materials' discoverability, we noted that while surveillance video can often reveal the true nature of a plaintiff's injuries, it can also be used by a defendant to distort the truth. Thus, we held that the plaintiff would be entitled to the surveillance information only after the defense has had an opportunity to depose the plaintiff regarding the injuries and their effects. *Id.* at 151. We reasoned that "[o]nce his testimony is memorialized in deposition, any variation he may make at trial to conform to the surveillance films can be used to impeach his credibility." *Id.*

Following *Snead,* SEPTA argues that it is not required to produce these items until it completes the depositions. The instant lawsuit, however, is not a personal injury lawsuit, but is instead a federal civil rights action in which the nature of the surveillance itself is at issue. The evidence generated by the surveillance will not be used to rebut a plaintiff's claim for compensation for injury; rather, evidence regarding the surveillance will be used to buttress Ms. Frazier's case-in-chief. Thus, the rationale supporting the holding in *Snead* is simply inapplicable to this case: no purpose would be served by requiring that Ms. Frazier's deposition go

forward prior to the production of the material at issue, since the instant lawsuit does not concern the injuries Ms. Frazier allegedly sustained in the 1985 bus accident. Accordingly, our Order will command SEPTA to produce the Gettier reports and the invoices within seven days of the Order's entry.

### 2. *Opinion Work Product*

As we recognized above, an attorney's opinion work product is afforded a near absolute protection from discovery. The rationale animating the rule regarding opinion work product is that the interest in reaching the slight factual content the work product may contain is normally overcome by the interest in protecting counsel's thought processes and "in ensuring that each side relies on its own wit" in preparing and presenting its case. *Sporck*, 759 F.2d at 316. We have recognized, however, an exception to the rule that pertains where counsel's " 'mental impressions and opinions are directly at issue.' " *In re Sunrise Sec. Litigation*, 130 F.R.D. 560, 566 (E.D.Pa.1989) (quoting *Reavis v. Metropolitan Property & Liability Ins. Co.*, 117 F.R.D. 160, 164 (S.D.Cal.1987)); *see* 8 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2026 (Supp. 1994) ("Documents that would otherwise be protected must be produced if the knowledge, mental impressions, opinions, and advice of a lawyer or law firm are at issue in a litigation to which the lawyer or law firm is a party.").

■ Moreover, we have required the party seeking discovery of opinion work product to demonstrate that the need for production is "compelling;" that is, that the information at issue "is within the exclusive control of the party from whom discovery is sought." *In re Sunrise*, 130 F.R.D. at 568–69 (citing *Bird v. Penn Cent. Co.*, 61 F.R.D. 43, 46–47 (E.D.Pa. 1973)); *see Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926, 931 (N.D.Cal. 1976) (holding opinion work product discoverable where counsel's activity in one suit is at issue in a second action: "Since the lawyers who managed and supervised the former litigation for the defendants are being called as witnesses [in the instant suit], plaintiff has a particularized and compelling need for the

production of the relevant work product of these attorneys.").

■ Upon careful review of the parties' submissions with regard to this issue, we conclude that the invocation of the at-issue exception is warranted. First, it is clear that at least some of the information Ms. Frazier seeks is directly relevant to the heart of her case. Ms. Frazier's theory is that SEPTA violated her federally-protected civil rights by conducting an intrusive form of surveillance designed to prey upon her mental frailties. Thus, the instructions and advice provided by SEPTA's attorneys regarding the manner and mode of surveillance employed in defending the underlying action are at issue here. Moreover, we are convinced that information such as relevant internal memoranda is within SEPTA's exclusive control. Thus, we conclude that Ms. Frazier has a compelling need regarding those documents which relate to Ms. Frazier's theory of liability.

SEPTA has raised a number of objections, which we now address. The first is that the discovery Ms. Frazier seeks exceeds the scope of our February 17, 1995 Order, in which we limited discovery to the issue of liability; that is, whether the alleged surveillance of Ms. Frazier conducted by SEPTA violated her federal rights. While we have not been called upon to consider the precise nature of Ms. Frazier's civil rights claim, and therefore make no comment regarding the sufficiency of her complaint in this respect, we again note that the gravamen of the complaint is that SEPTA, in an effort to exploit Ms. Frazier's precarious mental condition, conducted intrusive surveillance of her in violation of her civil rights. Thus, issues such as SEPTA's intent and purpose in conducting the surveillance, as well as the actions it took or directed to be taken, are all relevant. To the extent the materials sought relate to these issues, therefore, they are discoverable.

■ Further, SEPTA contends the procedural status of the underlying action prevents us from issuing an order compelling discovery of the disputed materials. The verdict in favor of SEPTA in the underlying action has been affirmed by the Common-

wealth Court; and while Ms. Frazier has indicated her intention to petition the Supreme Court of Pennsylvania for allocatur, we note that there is currently no appeal pending with respect to the underlying tort case. Still, SEPTA argues, without citation, that production would be improper as long as there is at least some chance that the underlying case will be re-tried. SEPTA's concern is that Ms. Frazier would then be privy to its counsel's innermost thoughts and strategies regarding the tort action. Upon review, we believe that SEPTA has overstated the danger. First, as we hinted above, our Order to produce the requested discovery will be granted only to the extent that the work-product at issue concerns the decision to monitor Ms. Frazier and the means by which the surveillance was conducted. Thus, SEPTA will not be compelled to produce opinion work-product relating to issues such as trial strategy, strengths and weaknesses of the case, and the like. Moreover, since the underlying action has been tried and a jury verdict rendered, we are not convinced that the disclosure of selected work-product will "severely compromise SEPTA's ability to defend itself," as SEPTA argues. Accordingly, we will issue an Order to compel SEPTA to produce any attorney work-product generated in the underlying tort action that is relevant to the issue of the alleged surveillance of Ms. Frazier, pending our consideration of a protective order that addresses SEPTA's confidentiality concerns.[11]

### 3. SEPTA's Intra–Office Guidelines

█ SEPTA has also refused to produce its intra-office guidelines and memoranda relating to the general use and employment of surveillance operations. As we noted above, on February 17, 1995, we issued an Order in which we limited discovery to the issue of whether the alleged surveillance of Ms. Frazier conducted by SEPTA violated her federal rights. Thus, SEPTA argues that material sought here is not relevant to the issue to which we narrowed discovery. To be sure,

the discovery requested is relevant to the issue of whether SEPTA maintains a policy and custom of conducting surveillance of claimants in violation of their federally protected rights. In addition, however, we find that the discovery sought could reasonably be used to acquire admissible evidence relevant to the scope of allowable discovery. For example, Ms. Frazier could question SEPTA's representatives regarding the extent to which the surveillance operations generally undertaken were conducted in Ms. Frazier's particular case. Accordingly, we will grant Ms. Frazier's motion to compel as it relates to the surveillance guidelines, subject to our consideration of a protective order that addresses the confidential and proprietary nature of the guidelines.[12]

### D. Plaintiff's Motion to Extend the Discovery Deadline

The final motion to be addressed is Ms. Frazier's motion to extend the discovery period from its current deadline of March 27, 1995. In her motion, Ms. Frazier blames SEPTA for causing the need to request more time, and asks for an additional ninety days in which to complete discovery. Predictably, SEPTA places the blame with Ms. Frazier, and asks us to deny the motion. The Court will not wade through the motions and exhibits in an effort to determine which party is the more blameworthy and which is deserving of a ruling in its favor. In the interest of bringing this action closer to a fair disposition, however, we will allow the parties an additional twenty-one days in which to complete discovery. No further extensions will be permitted.

### III. CONCLUSION

For the above stated reasons, Ms. Frazier's second motion for a protective order will be denied. SEPTA's motion to compel the deposition of Mr. Neff will be granted, but its request for the costs and expenses associated with filing the motion will be denied. Fur-

---

11. See infra, note 12.

12. SEPTA indicates that if it is called upon to produce the guidelines or any other work product, it will seek a protective order to address confidentiality concerns. Thus, we will ask SEP-

TA and Ms. Frazier to submit, within seven days of the entry of the Order, a proposed confidentiality order that properly balances the interests of the parties.

ther, SEPTA's motion to compel the redeposition of Ms. Frazier and for sanctions will be granted. As for Ms. Frazier's motions, the motion to compel discovery will be granted in part, and we will extend the discovery period by twenty-one days.

An appropriate order follows.

### ORDER

AND NOW, this 22nd day of May, 1995:

1. Upon consideration of Plaintiff's Motion for a Protective Order, and Defendant's response thereto, it is hereby ORDERED that said Motion is DENIED.

2. Upon consideration of Defendant's Motion to Compel the Deposition of Bruce L. Neff, Esquire, and for Sanctions, and Plaintiff's response thereto, it is hereby ORDERED that said Motion is GRANTED in PART. Mr. Neff shall appear for a deposition at a mutually convenient time within ten (10) days of the entry of this Order. Defendant's Request for the costs and expenses associated with the filing of said Motion is hereby DENIED.

3. Upon consideration of Defendant's Motion to Compel the Re–Deposition of Plaintiff and for Sanctions, and Plaintiff's response thereto, it is hereby ORDERED that said Motion is GRANTED. Ms. Frazier shall appear for her re-deposition at mutually convenient time within ten (10) days of the entry of this Order. It is further ORDERED that Mr. Neff shall reimburse Defendant for the costs and fees associated with the filing of this Motion, including a reasonable attorney's fee. Defendant shall submit, within ten (10) days of the entry of this Order, an affidavit describing the nature of the expenses incurred. Mr. Neff shall have five (5) days thereafter to pay Defendant the amount requested or file any objections.

4. Upon consideration of Plaintiff's Motion to Compel, and Defendant's response thereto, it is hereby ORDERED that said Motion is GRANTED as follows:

A. With respect to the ordinary work product identified in the attached Memorandum, Defendant shall produce those items within seven (7) days of the entry of this Order.

B. With respect to the opinion work product, the parties shall submit, within seven (7) days of the entry of this Order, a proposed confidentiality Order that appropriately balances the interests of the parties. Within five (5) days of the entry of the confidentiality order, Defendant shall produce the opinion work product that relates to "surveillance" as described in the attached Memorandum.

5. Upon consideration of Plaintiff's Motion for an Extension of the Discovery Deadline, and Defendant's response thereto, it is hereby ORDERED that the discovery cut-off date shall be set at a date twenty-one (21) days from the date of entry of this Order.