## Szarmack *v.* Welch, Appellant.

Argued November 11, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and CERCONE, JJ. (SPAULDING, J., absent).

*Robert S. Grigsby,* with him *Janet N. Valentine,* and *Thomson, Rhodes & Grigsby,* for appellant.

*Clyde T. MacVay,* and *Evans, Ivory & Evans,* submitted a brief for appellee.

OPINION BY HOFFMAN, J., March 24, 1972:

The basic issue in this appeal is whether, under the applicable Pennsylvania Rules of Civil Procedure, the appellee is entitled to pre-trial discovery of the amount of available liability insurance coverage. This is a question of first impression in the appellate courts of Pennsylvania. The lower courts have split, some requiring disclosure and others construing the Rule of Civil Procedure to prevent compulsory disclosure.[1]

---

[1] Those decisions in favor of disclosure are: *Waksman v. Walker,* 44 Pa. D. & C. 2d 1 (Philadelphia County 1968) ; *Grove v. Hile,* 46 Pa. D. & C. 2d 89 (Mercer County 1969) ; *Berek v. Smock,* 46 Pa. D. & C. 2d 221 (Mercer County 1969) ; *Dashem v. Moorehead,* 46 Pa. D. & C. 2d 563 (Centre County 1969) ; *Harrison v. Nichols,* 49 Pa. D. & C. 2d 217 (Delaware County 1970) ; *Muschar v. University and City Ministries,* 118 P.L.J. 409 (Allegheny County 1970) ; *Brown v. Metz,* 48 Pa. D. & C. 2d 711 (Mercer County 1970) ; *Jamestown Paint and Varnish Company v. Stewart,* 49 Pa. D. & C. 2d 437 (Mercer County 1970) ; *Horner v. Wallace,* 51 Pa. D. & C. 2d 1 (Centre County 1971).

Those decisions against disclosure are: *Covert v. Cingolani,* 1 Butler L. J. 65 (1956) ; *Howell v. Spatz,* 14 Pa. D. & C. 2d 295 (Montgomery County 1958) ; *Cipparone v. Kosloski,* 46 Pa. D. & C. 2d 628 (Philadelphia County 1969) ; *Broennle v. Stitt,* 47 Pa. D. &

Pennsylvania Rule of Civil Procedure 4007(a) provides in relevant part that ". . . the deponent may . . . be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the action and will substantially aid in the preparation of the pleadings or the preparation or trial of the case". Pennsylvania Rule of Civil Procedure 4007, adopted November 20, 1950, as amended April 12, 1954.

The construction of Rule 4007 should be in accordance with the Rules of Construction contained within the Pennsylvania Rules of Civil Procedure. Those rules of construction provide that [t]he rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. . . ." Pennsylvania Rule of Civil Procedure 126, adopted May 1, 1939.

"When the words of a rule are not explicit, the intention of the Supreme Court may be ascertained by considering, among other matters (1) the occasion and necessity for the rule; (2) the circumstances under which it was promulgated; (3) the mischief to be remedied; (4) the object to be attained; (5) the prior practice, if any, including other rules and Acts of Assembly upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous history of the rule; and (8) the practice followed under the rule." Pennsylvania Rule of Civil Procedure 127(c), adopted May 1, 1939.

Appellee contends that the disclosure of insurance policy limits would aid in settlement negotiations, and necessarily reduce the backlog of cases. The argument is that many plaintiffs who would otherwise settle at or near the policy limits are encouraged to

C. 2d 644 (Armstrong County 1969) ; *Toogood v. Watkins*, 46 Pa. D. & C. 2d 365 (Philadelphia County 1969) ; *Sperath v. Thomas*, 48 Pa. D. & C. 2d 309 (Bucks County 1969) ; *Little v. Sebastian*, 50 Pa. D. & C. 2d 761 (Lebanon County 1970).

proceed to trial in the hope of obtaining an enforcible judgment for much more than they could possibly collect. Appellant answers that where policy limits are high, rather than low, the discovery of those limits will encourage protracted litigation and increase court congestion. In *Slomberg v. Pennabaker*, 42 F.R.D. 8 (M.D. Pa. 1967), Judge FOLLMER answered appellant's argument that disclosure of high limits would retard settlements: "[i]t is my opinion that in the balance, disclosure would assist amicable settlement without a trial, much more than nondisclosure does. I am in agreement with Judge HOLTZHOFF's view that discovery of coverage and its extent is conducive to fair negotiations and to just settlement. *Cook v. Welty*, 253 F. Supp. 875 (D.C. 1966) at 877. The whole purpose of litigation is to produce results fair to both sides, not to play a game of hide and seek. Disclosure of the extent of coverage would induce more purposeful settlement discussions."[2] *Slomberg v. Pennabaker*, supra, at 11-12, quoted in *Waksman v. Walker*, 44 Pa. D. & C. 2d 1 (1968).[3]

---

[2] *Slomberg* was decided prior to the recent amendment of the Federal Rules of Civil Procedure which expressly allowed the discovery of insurance coverage. Under the old Federal Rule concerning discovery, which was similar to our present Rule 4007, the federal courts had split on whether disclosure was proper.

[3] Judge SILVESTRI in *Muschar v. University and City Ministries*, 118 P.L.J. 409 (1970), also addressed himself to the argument that disclosure of high limits would retard settlement: "[defendants] argue that plaintiff's case will increase in his estimation in proportion to the amount of coverage and he will be encouraged to increase his demand and risk trial before a sympathetic jury. This is a fallacious argument. It presupposes three things: (1) that plaintiff's Bar acts irresponsibly in determining the value of a case, (2) that plaintiff's Bar has no regard for the expertise of insurance companies and their counsel in determining the value of a case and (3) that the plaintiff's Bar believes the defense Bar is incompetent in the trial of cases.

"There is no evidence of the first presupposition and we reject it. . . .

In *Waksman v. Walker*, supra, Judge ULLMAN considered the advantages of the settlement process: "[a] judicial system should and must respond to its own needs. The greatest single problem facing the courts today is the one of calendar congestion. The simple fact is that there are economic forces which tend to resist correction of this congestion and which secure advantage from the delay in case disposition. We, therefore, begin our inquiry with a frank recognition that, as a matter of policy, the concealment of the fact and scope of insurance may be used to and may serve to further the cause of delay and intensify calendar congestion." *Waksman v. Walker*, supra, at 3.

Appellant argues, nonetheless, that disclosure is not "relevant to the subject matter involved" as required by Pennsylvania Rule of Civil Procedure 4007(a). Judge SILVESTRI, however, more than adequately answered this argument in *Muschar v. University and City Ministries*, 118 P.L.J. 409, 411 (1970): "[t]he test of relevancy is not whether the information sought would be admissible in evidence, but whether it is relevant to the subject matter of the action. This is clear from the rule itself [Rule 4007] which uses the broad term 'subject matter'. Any interpretation which would limit

---

"As for the second and third presupposition, in this court's long experience . . . we have never witnessed a disregard for insurance counsel's expertise. . . .

". . . there is more to settlement than a numbers game. Plaintiffs will not hold out for a larger figure simply because there is adequate insurance, the real factors in their determination are what they believe a jury will ultimately decide as to liability and damages, the availability of the parties, witnesses, both liability and medical, who the parties are, the kind of witness they will make, extent and duration of the injury, the expense of trial, the possible delay, and what they think the insurance company will pay. Plaintiffs must consider the insurance company's appraisal of the case and the fact that it also must take into account the same considerations. . . ." *Muschar v. University and City Ministries*, supra, at 412-413.

discovery to evidence admissible at trial would violate Pennsylvania Rules of Civil Procedure, 126, providing for a liberal construction to secure the just, speedy and inexpensive determination of every action. . . . What then are the boundaries of relevant subject matter? They are certainly broader than the precise issues presented by the pleadings, again clear from the rule itself. But do they include insurance coverage?

"It seems to this court that the subject matter of an action includes the entire scope of the adversarial process from its origin to the collection of judgment. Inherent in this process are pre-trial negotiation and settlement. It would appear logical, therefore, that information as to the amount of liability insurance would be directly relevant. Since the claimant sues to recover money, he is not interested in a paper judgment. The question of insurance coverage may be the only relevant issue. Thus, discovery of insurance will facilitate a realistic approach to the case and its preparation."

The Supreme Court of Illinois, in *People ex rel. Terry v. Fisher*, 12 Ill. 2d 231, 238, 145 N.E. 2d 588 (1957), held that disclosure of insurance coverage was "related to the merits of the matter in litigation", as required by Illinois' Civil Practice Rules 19-11 and 19-4: "[l]itigation is a practical business. The litigant sues to recover money and is not interested in a paper judgment that cannot be collected. The presence or absence of liability insurance is frequently the controlling factor in determining the manner in which a case is prepared for trial. That there will be actual rather than nominal recovery conditions every aspect of preparation for the trial of these cases,—investigators, doctors, photographers and even the taking of depositions. Ordinarily a plaintiff has many sources of inquiry by means of which he can appraise the likelihood that the judgment he seeks will be enforceable.

In the case of an insurance policy, however, all the customary channels are cut off. Even if he knows the identity of the insurance company and may know its financial standing, it does not help him, for the company is responsible only within the limits of the policy it has issued.

". . . Inasmuch as the insurance company is virtually substituted as a party [citations omitted], as far as the investigation and conduct of the defense is concerned, it would seem to be relevant, if not indispensable, that plaintiff's attorney have knowledge of the existence of insurance in order to prepare for the case he has to meet and be apprised of his real adversary".

Appellant argues in the instant case that if disclosure of insurance coverage is allowed, there would be no way of preventing plaintiffs from obtaining discovery of assets and net worth of defendants. We are not persuaded by this argument. The concern for the privacy of the individual which would prevent us from opening a defendant's financial affairs to the public would not prevent us from allowing disclosure of liability insurance contracts. The insurance contract is a contingent asset only. Its existence becomes significant only when litigation requires that the insurance company stand in the place of defendant and protect his personal assets. See *Pretrial Discovery of Insurance Coverage,* 16 Wayne L.R. 1047 (1970).

It is doubtful that a defendant would object to revealing the policy limits of his insurance. Such knowledge would tend to adjust the plaintiff's settlement objective to within the insurance limits and eliminate the risk to a defendant's personal assets. An insurance company would violate its obligation to an insured to act in good faith if it did not reveal the existence of low policy limits when such a revelation would serve to protect the insured from a judgment far above the policy limits. As was stated in *Waksman*

*v. Walker,* supra, at 11: "[i]n asserting control and right of control over the internal problems of the courts and judicial process, we are also mindful of the fact that there are important features of conflict of interest for the insurance company, as contrasted to its own assured, and that this conflict may extend to counsel who purports to act for the assured though his real and meaningful principal is the carrier. It is the carrier which assumes the defense of the action, furnishes counsel to defendant, and does the investigation in preparation for trial. Our Supreme Court has made it clear that in a clear liability case, where damages exceed policy limits, an insurance carrier may become liable for excess coverage, if it fails to act in good faith: Gray v. Nationwide Mutual Insurance Company, 422 Pa. 500 (1966). In such a situation, we are of the opinion that the record should affirmatively disclose such possibility of conflict, so that the court may safeguard the rights of the litigants and supervise its own officers."

For the above reasons we hold that Pennsylvania Rule of Civil Procedure 4007(a), which was intended to secure the just, speedy and inexpensive determination of proceedings encompassed by the rules, requires the disclosure of the existence and policy limits of liability insurance coverage.

The order of the court below is affirmed.