## Szarmack *v.* Welch, Appellant.

Argued March 12, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Robert S. Grigsby,* with him *Janet N. Valentine,* and *Thomson, Rhodes & Grigsby,* for appellant.

*Clyde T. MacVay,* for appellee.

OPINION BY MR. JUSTICE NIX, April 23, 1974:

This appeal presents the narrow issue of whether, under the applicable Pennsylvania Rules of Civil Procedure, the appellee is entitled to pretrial discovery of the extent of automobile liability insurance carried by appellant. On May 11, 1970, appellee Joseph Szarmack instituted this action against Wilbert C. Welsh, Jr. by way of a complaint seeking compensatory and punitive damages for injuries allegedly sustained as the result

of appellant's negligent operation of his motor vehicle.

During the course of pretrial discovery proceedings, appellee served appellant with the following written interrogatories to which appellant objected: "1. Was the defendant insured by a policy of liability insurance on the date of the accident herein involved?  2. If the answer to the preceding interrogatory is yes, state: (a) The name of the insurance carrier.  (b) The limits of liability for bodily injury."  After a hearing, the trial court granted appellee's motion to compel answers to the interrogatories and, when appellant refused to comply, appellee moved for sanctions.  The trial court then entered a default judgment in favor of the appellee.  On appeal, the Superior Court affirmed, *Szarmack v. Welch*, 220 Pa. Superior Ct. 407, 289 A.2d 149 (1972), and we granted allocatur.

The issue presented here has divided the commentators, the lower courts of this state,[1] courts of other

---

[1] Those permitting discovery being: *Hum v. Orr*, 84 York 205 (1971); *Muschar v. University & City Ministers*, 118 P. L. J. 409 (1970, Allegheny County); *Harrison v. Nichols*, 49 D. & C. 2d 217 (1970, Delaware County); *Senneca v. Bird*, 53 D. & C. 2d 613 (Northampton County, 1970); *Dashem v. Morehead*, 46 D. & C. 2d 563 (1969, Centre County); *Groce v. Hile*, 46 D. & C. 2d 89 (1969, Mercer County); *Berek v. Smock*, 46 D. & C. 2d 221 (1969, Mercer County); and *Waksman v. Walker*, 44 D. & C. 2d 1 (1968, Philadelphia County).

Those denying discovery being: *Cornman v. Tate*, 21 Cumb. L. J. 69 (1971); *Michael v. VanBilliard*, 34 Lehigh L. J. 388, 54 D. & C. 2d 129 (1971); *Russler v. Covert*, 53 D. & C. 2d 37 (Mifflin County, 1971); *Roth v. Serfass*, 52 D. & C. 2d 663 (Monroe County, 1971); *Patts v. Yancey*, 53 West. L. J. 147 (1971); *Rayman v. Sanner*, 26 Sommerset L. J. 157 (1970); *Broennie v. Stitt*, 47 D. & C. 2d 644 (1969, Armstrong County); *Sperath v. Thomas*, 48 D. & C. 2d 309 (1969, Bucks County); *Toogood v. Watkins*, 46 D. & C. 2d 365 (1969, Phila. County); *Cipparone v. Kosloski*, 46 D. & C. 2d 628 (1969, Phila. County); *Howell v. Spatz*, 14 D. & C. 2d 295 (1958, Montgomery County); and *Covert v. Cingolani*, 1 Butler L. J. 65 (1956, Butler County).

states, and, before the promulgation of F. R. Civil P. 26(b)(2),[2] the Federal courts.[3]

The scope of written interrogatories used in pretrial discovery is limited by Pa. R. C. P. 4005 and 4007 to ". . . any matter, not privileged, which is relevant to the subject matter involved in the action and will substantially aid in the preparation of the pleadings or the preparation or trial of the case." In construing the above language, we must also accommodate Rule 4011 which forbids discovery which "is sought in bad faith; causes unreasonable annoyance . . ., [or] relates to any other matter which is privileged." Thus, while our rules do not explicitly decide the issue presented here, they provide the following guidance: (1) the material must be relevant to the subject matter involved in the action; (2) the material must substantially aid in the preparation or trial of the case; (3) the material must not be privileged, or otherwise prohibited by Rule 4011.

In our view, the discovery sought here would foster the general objectives set forth in our procedural rules. Realistically, the plaintiff and his attorney must have some assurance that there can be recovery in the event of a favorable verdict to justify the time, effort and

---

[2] That rule became effective on July 1, 1970 and provides: *"Insurance Agreements.* A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial. For purposes of this paragraph, an application for insurance shall not be treated as part of an insurance agreement."

[3] For a comprehensive list of cases and commentators dealing with this issue, see, Davis, Pretrial Discovery of Insurance Coverage, 16 Wayne L. Rev. 1047 (1970). *See also,* Anno., 13 A.L.R. 3d 822.

expense in the preparation of the case for trial. As the court noted in *Groce v. Hile, supra,* at 93: "Whether a substantial verdict can be recovered is of prime concern, not after judgment is obtained, but from the time that the suit is commenced. It continues through pretrial negotiations and influences the manner of preparation and trial of the case. An example of this might well be that plaintiff would expend additional money to obtain medical experts, surveys and diagrams or other evidence favorable to his cause if he knows there is ample coverage. All of this has great practical relevancy in the preparation and evaluation of the case."

The extent of insurance coverage is not only valuable to plaintiff's counsel in determining how to prepare his case, but also in evaluating offers of settlement. A paper judgment is obviously meaningless to the plaintiff, *People ex rel. Terry v. Fisher,* 12 Ill. 2d 231, 238, 145 N.E. 2d 588, 593 (1957) and *Ellis v. Gilbert,* 19 Utah 2d 189, 429 P.2d 39 (1967), and he will keep his settlement demands within policy limits if he is aware of those limits. As Judge MANSFIELD of the Southern District of New York observed in *Clauss v. Danker,* 264 F. Supp. 246, 248 (S.D. N.Y. 1967): "This court has witnessed the dismal waste of time and effort, both on the part of the parties and the court, in cases where an early disclosure of limited policy limits would have led to prompt settlements that were not reached until the eve of the trial, when such information was first revealed after needless pretrial discovery and preparation for trial. Aside from such unnecessary consumption of time and effort resulting from inability to learn such crucial information until the very last minute, the effect frequently is to disrupt the court's schedule and cause loss of trial time for many needy prospective litigants." In this way, discovery of a policy of relatively low limits will be a very effective in-

centive to settlement and will further the general purpose of all procedural rules: "The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable." Pa. R. C. P. 126.

Appellant counters by suggesting that discovery of high policy limits will frustrate settlement by encouraging the plaintiff to seek an excessive recovery. First, we cannot assume, as appellant does, that settlement is a game whereby the defendant is entitled to crucial information not possessed by the plaintiff.

"The liberal rule thus does not upset the natural bargaining position of the parties. Instead, the effect of discovery of insurance coverage is to equalize the knowledge of both parties, with the result that settlements will be based more upon a fair evaluation of plaintiff's claim and less upon ignorant conjecture concerning the depth of defendant's pocket. Courts cannot forever hold themselves, as if unknowing, above that stage of litigation wherein negotiation and settlement occur. It would contravene the liberal policy of the federal rules to encourage the knowledgeable resolution of disputes at one point and discourage it at another." *Landkammer v. O'Laughlin* 45 F.R.D. 240, 241 (S.D. Iowa 1968). Second, it is the insurance company, not the named defendant, who seeks to withhold such information. In so doing, the company may well be gambling on a verdict of non-liability where the only one who stands to lose from that gamble is the policyholder. See, *Gray v. Nationwide Mutual Ins. Co.*, 422 Pa. 500, 223 A.2d 8 (1966). Such a situation is hardly conducive to the just, speedy and inexpensive determination which our rules are designed to foster.

Moreover, appellant's assertion that disclosure of high coverage will discourage settlement and inflate claims ascribes to the members of our bar a degree of

irresponsibility or lack of integrity that we will not accept.[4]

"Plaintiffs will not hold out for a larger figure simply because there is adequate insurance, the real factors in their determination are what they believe a jury will ultimately decide as to liability and damages, the availability of the parties, witnesses, both liability and medical, who the parties are, the kind of witness they will make, extent and duration of the injury, the expense of trial, the possible delay, and what they think the insurance company will pay. Plaintiffs must consider the insurance company's appraisal of the case and the fact that it also must take into account the same considerations. It would be the novice indeed who would hold out on the simple hope that some stroke of luck will deliver him a jury which would return a verdict far in excess of the range of what his case was worth, then holding it on appeal." *Muschar v. University & City Ministries,* 118 P.L.J. 409, 413 (1970). See also, *Ash v. Farwell,* 37 F.R.D. 553 (D. Kan. 1965); *Ellis v. Gilbert, supra.*

Appellant also raises the argument that the extent of insurance coverage is privileged. Basically, he asserts that insurance coverage is no different from other private financial information which determines the defendant's ability to pay a potential judgment. We cannot agree. Insurance coverage is not in the same category with the defendant's other assets. The worth of such coverage is contingent on recovery by the plaintiff, and its sole purpose from the defendant's point of view is to protect his other assets. This is not to require disclosure of the private financial status of an individual but merely to reveal the extent of protection which was purchased specifically for such eventuality.

---

[4] There are alternative methods of sanctioning the practitioner who illegally inflates claims. *See,* Pennsylvania Supreme Ct. Rule 17.

As we have noted, the defendant (presumably the person whose privacy would be violated) is not the party resisting disclosure since such disclosure would tend to dispose of claims within policy limits and relieve defendant of personal exposure.

Additionally, this state's financial responsibility provision evidences a strong public policy to protect those injured as a result of automobile accidents by encouraging the acquisition of adequate insurance coverage. See, The Vehicle Code, Act of April 29, 1959, P. L. 58, §§1401 et seq., as amended, 75 P.S. §1401 et seq. It would be anomalous to require the victim to remain in the dark as to the existence of and extent of coverage until after the entry of judgment. *Johanek v. Aberle*, 27 F.R.D. 272 (D. Mont. 1961) ; *Superior Ins. Co. v. Superior Court* 37 Cal. 2d 749, 235 P.2d 833 (1951).

For all of the reasons noted, we agree with the courts below that the information which plaintiff sought is discoverable. While entry of a default judgment is one of the permissible sanctions in such cases, we feel that the interests of justice would be served best by giving the appellant an opportunity to comply with the discovery in light of this opinion. This is so because of the considerable split of authority that existed in this state (see n.1, *supra*), and because the only way in which appellant could obtain appellate resolution of that issue was by refusing to supply the requested information. Since up to this time this Court has not resolved this dispute, it would be unjust to permit the default judgment to stand in this case.

Judgment is vacated and the matter is remanded to proceed in accordance with this opinion.

Mr. Justice POMEROY concurs in the result.