## Executive Risk Indemnity Inc. v. Cigna Corporation

C.P. of Philadelphia County, November Term 2004, no. 1495.

*Ronald P. Schiller,* for plaintiff.
*Peter J. Hoffman* and *Christopher Thomson,* for defendant.

BERNSTEIN, *J.*, August 18, 2006—This is a coverage dispute in connection with a number of federal and state class actions and individual lawsuits filed against defendant Cigna Corporation Inc. The underlying actions were resolved without trial. Plaintiff Executive Risk Indemnity Inc. seeks a declaration that no coverage is afforded and Cigna in its counterclaim seeks indemnification. Presently before the court are numerous discovery motions filed by Cigna. For the reasons discussed below, the motions are granted in part and denied in part.

## BACKGROUND

Cigna operates and administers managed care organizations throughout the United States. Cigna enters into contractual agreements with designated physician and other providers who treat individuals who have become members of its managed care organization or who are employed by organizations that have entered into agreements with Cigna to serve as administrator of the employer organization's self-funded third party health plan (Subscribers).

In or about 1999, a number of lawsuits were filed against Cigna throughout the United States in connection with the operation and administration of its managed care organizations. These Subscriber lawsuits alleged that Cigna failed to provide health care coverage based upon "medically necessary criteria" as determined by a medical professional. The Provider lawsuits alleged that Cigna failed to promptly pay Providers for medically necessary services as required under the Provider agreements. Some Provider and Subscriber lawsuits were consolidated and transferred to the Federal Judicial Panel on Multidistrict Litigation to the United States

District Court for the Southern District of Florida where they were placed on one of two tracks, the Subscriber track or the Provider track. On September 26, 2002, the Multidistrict Litigation Court denied class certification for the Subscriber class litigation, and on May 14, 2003 the Subscriber litigation was dismissed.

Lloyds of London was Cigna's primary professional liability insurer for the policy period of March 30, 1999 through March 30, 2002 and provided the first non-captive professional liability insurance coverage to Cigna. The Lloyds policy of insurance contained a liability limit of $50,000,000, subject to a $15,000,000 self insured retention per professional liability claim.

Executive Risk entered into an insurance agreement with Cigna to participate in the first excess layer of insurance coverage for the same policy period as Lloyds. Agricultural Excess and Surplus Insurance Company (AESIC), Travelers Insurance Company, Steadfast Insurance Company, Gulf Insurance Company, ACE Bermuda Insurance Ltd. and Reliance National Insurance Company (First Excess Layer Insurers) also entered into insurance agreements with Cigna as excess insurers.

Cigna provided notice of the Multidistrict Litigation to its insurers in March 2000.

In or about February or March 2002, plaintiff Executive Risk and Cigna's other insurers entered into an oral joint defense agreement in anticipation of Cigna's claim for coverage.

On September 4, 2003, Cigna reached a settlement with the Providers and demanded that Lloyds advance payment or reimburse Cigna's defense costs associated with both the Subscriber litigation and the Provider litigation and demanded that Lloyds and the excess carriers, including

plaintiff Executive Risk, indemnify Cigna for the costs associated with settlement of the Provider litigation.

On May 11, 2004, the First Excess Layer Insurers collectively issued a coverage analysis and reservation of rights letter to Cigna denying coverage for the claims presented in the Multidistrict Litigation. On June 18, 2004, Lloyds also denied coverage.

On May 13, 2004, the First Excess Layer Insurers and certain members of the Second Excess Layer Insurers, Steadfast Insurance Company, ERC Frankona Reinsurance Limited, London, UK, XL Insurance Company Ltd., Great Lakes Reinsurance (UK), PLC and Liberty International, attended a meeting with Cigna wherein Cigna proposed an excess carrier-only mediation to resolve the coverage issues surrounding the Multidistrict Litigation. Following that meeting, the First Excess Layer Insurers proposed mediation with all insurers including Lloyds, the primary carrier. Cigna agreed and all began working on protocol for the mediation including date, place, proposed list of mediators and information required for exchange.

In September 2004, Cigna informed the First Excess Layer Insurers that it would not participate in mediation with all Carriers but would participate in mediation with the First Excess Layer Insurers only. Four of the First Excess Layer Insurers, AESIC, Gulf, Travelers and Steadfast, agreed to participate in the mediation with Cigna excluding Lloyds. They developed a protocol for the mediation and scheduled the mediation for November 9, 2004. Plaintiff Executive Risk and ACE Bermuda were not consulted on the mediation protocol.

On September 29, 2004, because Cigna failed to provide a response to the First Excess Layer Insurers' coverage position and failed to explain its refusal to par-

ticipate in mediation with Lloyds, plaintiff Executive Risk was unable to determine whether it would attend the mediation. On October 19, 2004, Cigna informed the First Excess Layer Insurers that it had settled with Lloyds and that the policy issued by Lloyds had been fully tendered.

On November 9, 2004, four of the First Excess Layer Insurers and Cigna mediated the coverage dispute in New York City. Counsel for Executive Risk arrived to attend the mediation on Executive Risk's behalf. However, counsel for Executive Risk was asked to leave. At the conclusion of the mediation, AESIC, Gulf, Steadfast and Travelers settled with Cigna.

On November 11, 2004, plaintiff Executive Risk filed this complaint against Cigna. Cigna filed a counterclaim against plaintiff Executive Risk for breach of contract and bad faith. Plaintiff Executive Risk inadvertently produced in discovery the handwritten notes of Peter Blejwas, Esquire, a claims examiner responsible for handling Cigna's Multidistrict Litigation claims against plaintiff Executive Risk. Cigna returned these documents and filed a motion for their production. Cigna has filed three other discovery motions, a motion to compel reinsurance and valuation information, a motion to determine the application of the joint defense privilege, attorney-client privilege and work product privilege and a motion to issue commissions for the depositions of three insurer adjuster attorneys. Each of these motions will be discussed seriatim.

### A. *Cigna's Motion to Compel Reinsurance and Valuation Information*

Cigna filed a motion seeking to compel Executive Risk to produce reinsurance information together with valu-

ation and reserve information established in the Multidistrict Litigation. Specifically, Cigna served the following discovery requests on plaintiff Executive Risk:

"(10) all of the facts and circumstances and identify all witnesses and documents that reflect or relate to ERII's valuation of Cigna's coverage, claims, including but not limited to, their potential settlement value.

"(11) all of the facts and circumstances and identify all witnesses and documents that reflect or relate to the Other Insurers' valuation of Cigna's coverage claims including, but not limited to, their potential settlement value.

"(13) all of the facts and circumstances and identify all witnesses with knowledge of and documents that relate or refer to, any reinsurance policies that potentially provide coverage for Cigna's claims.

"(14) all facts and circumstances and identify all witnesses with knowledge of, and documents that relate or refer to, all notices, reports, memoranda, correspondence, e-mails, faxes and other communications to or from ERII's reinsurers relating to ERII's excess insuring agreement issued to Cigna.

"(15) all of the facts and circumstances and identify all witnesses with knowledge of, and documents that relate or refer to, ERII's procurement of reinsurance for ERII's excess insuring agreement issued to Cigna.

"(16) all of the facts and circumstances and identify all witnesses with knowledge of, and documents that relate or refer to, any bordereaux, computer entries, notations, postings or any other documentation which was required to be maintained by ERII's reinsurance policies and which reflect Cigna's claims.

"(17) identify the person or persons who placed the reinsurance for ERII's excess insuring agreement issued to Cigna.

"(1) Produce all documents identified in ERII's responses to the third set of interrogatories set forth above.

"(2) Please produce all documents, including but not limited to, correspondence, emails, notes, memoranda, phone logs, and any other medium, that relates or refers to any of the documents produced in response to request to produce no. 1 above.

"(3) Please produce all documents, including but not limited to, correspondence, emails, notes, memoranda, phone logs, and any other medium, that relates or refers to any of ERII's responses to the third set of interrogatories."

## 1. Reinsurance

Pennsylvania Rule of Civil Procedure 4003.2 provides:

"a party may obtain discovery of the existence and terms of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment . . . ."

As stated in the explanatory comment, this rule codifies the Pennsylvania Supreme Court's decision in *Szarmack v. Welch,* 456 Pa. 293, 299-300, 318 A.2d 707, 709-10 (1974), permitting discovery of insurance coverage. In *Szarmack,* the Supreme Court held that knowledge of insurance coverage is essential to the settlement process and fosters a just, speedy and inexpensive deter-

mination. Thus, even though inadmissible at trial, insurance information is discoverable. Cigna's discovery request for reinsurance coverage presents the same issue as those presented in a routine automobile accident case. Cigna is entitled to discover the existence and terms of plaintiff Executive Risk's reinsurance agreements applicable to Cigna and the Multidistrict Litigation.[1]

Cigna is also entitled to discover communications to or from plaintiff Executive Risk's reinsurers relating to reinsurance agreements applicable to Cigna and the Multidistrict Litigation. Cigna alleges in Count III of its counterclaim that plaintiff Executive Risk denied coverage in bad faith. To prove statutory bad faith, an insured must demonstrate by clear and convincing evidence that there was no reasonable basis for denying benefits and knew or recklessly disregarded this fact in denying the claim.[2] The communications between plaintiff Executive Risk and its reinsurer may lead to evidence concerning the true reasonable basis for denying coverage. Any communications between plaintiff Executive Risk and Cigna concerning reasons for denying coverage is discoverable.

## 2. Valuation

Cigna also seeks to discover plaintiff Executive Risk's and the "other insurers" valuations of Cigna's claim. Pennsylvania law requires insurance companies to establish reserves upon notice of losses potentially covered

---

1. In *PECO v. Insurance Company of North America,* 852 A.2d 1230 (Pa. Super. 2004), the Superior Court affirmed a trial court's decision permitting discovery of reinsurance information.

2. *Terletsky v. Prudential Property and Casualty Insurance Company,* 437 Pa. Super. 108, 125, 649 A.2d 680, 688 (1999).

by policies.[3] This requirement guarantees that insurance companies have the funds to pay claims as they become due. This requirement enables the insurance department to monitor the financial condition of insurance companies to protect consumers and hopefully maintain solvency despite unliquidated pending claims.[4]

Cigna seeks Executive Risk's reserve information to prove its claim of bad faith. Reserve information can be discoverable if relevant to an issue presented in a bad faith action. Reserve information is relevant to a bad faith claim based upon an insurer's failure to settle[5] or based upon a disputed issue of value of the claim or whether the insurance company made any reasonable settlement offer.[6] These bad faith claims do not exist in this case. This claim is exclusively grounded in plaintiff Executive Risk's denial of coverage. This claim does not involve the value of the claim or plaintiff Executive Risk's estimation of liability. The issue presented in this case is whether Executive Risk's denial was based on a reasonable interpretation of the insurance policy. The amount established as reserves does not demonstrate that the insurers expected such claims to be covered by the

---

3. See 40 Pa.C.S. §71.

4. See *Fidelity and Deposit Company of Maryland v. McCulloch,* 168 F.R.D. 516 (E.D. Pa. 1996).

5. See *North River Ins. Co. v. Greater New York Mutual Insurance Co.* 872 F. Supp. 1411 (E.D. Pa. 1995) (Reserve information discoverable where the primary insurer acted in bad faith in failing to settle within its policy limits before trial); *Maiden Creek T.V. Appliance Inc. v. General Casualty Insurance Company,* 2005 U.S. Dist. Lexis 14693 (E.D. Pa. 2005) (Discovery of reserve information permitted since the contract liability was undisputed and the insurer's value of the plaintiff's claim was relevant).

6. *Fretz v. Mutual Benefit Insurance Company,* 37 D.&C.4th 173 (Allegheny Cty. 1998).

policy. Reserves are required both by statute and responsible insurance practice and are independent of litigation strategy. The reserve information requested is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.[7] Cigna's motion to compel reserve information is denied.

## B. *A Joint Defense Agreement Existed Between Executive Risk and the Other Insurers Prior to September 29, 2004*

Pennsylvania Rules of Civil Procedure 4003.1, 4003.3 and 4011 prevent the discovery of privileged documents. The attorney-client privilege codified at 42 Pa.C.S. §5928 provides:

"In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial of the client."

The attorney-client privilege applies to confidential communications made by a client to an attorney in connection with legal services. The attorney-client privilege also covers confidential communications from an attor-

---

7. The Pennsylvania Supreme Court in *PECO v. Insurance Company of North America,* 852 A.2d 1230 (Pa. Super. 2004), reversed the trial court's order compelling the production of reserve information finding that reserve information was not relevant to the claims at issue in a non bad faith scenario. While no Pennsylvania cases exist discussing the discoverability of reserve information in a bad faith case involving failure to provide coverage, at least two district court cases have ruled that reserve information is not discoverable. See *Fidelity and Deposit Company of Maryland v. McCulloch,* 168 F.R.D 516 (E.D. Pa. 1996), and *Safeguard Lighting Systems Inc. v. North American Specialty Insurance Company,* 2004 U.S. Dist. Lexis 26136 (E.D. Pa. December 30, 2004).

ney to the client when based upon confidential facts that the client has disclosed.[8] Where the client is a corporation, the privilege extends to communications between its attorney and agents or employees authorized to act on its behalf.[9]

This privilege is intended to foster candid communications between legal counsel and the client so that counsel can provide legal advice based upon the most complete information possible.[10] Confidentiality is key to the privilege. The attorney-client privilege is lost if the client discloses an otherwise privileged communication to a third party. The presence of a third party during attorney-client communications will generally negate the privilege. Presumably the client does not intend communications to be confidential if heard by someone else.[11]

In *Commonwealth v. Scarfo,* 416 Pa. Super 329, 611 A.2d 242 (1992), the Superior Court was asked to determine whether attorney-client privilege protected attorney communications when shared with other criminal defendants and their attorneys as part of a joint defense. In *Commonwealth v. Scarfo,* eight jointly tried defendants were found guilty of first-degree murder and received mandatory sentences of life in prison. Prior to trial all defendants jointly participated with their attorneys in a joint defense, sharing information in furtherance of this strategy. At trial, however, one of the defendants decided to plead guilty and testify for the Commonwealth.

---

8. *Slusaw v. Hoffman,* 861 A.2d 269, 273 (Pa. Super. 2004).

9. *Upjohn Company v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

10. *Commonwealth v. Chmiel,* 558 Pa. 478, 738 A.2d 406 (1999).

11. *Johnston v. Johnston,* 346 Pa. Super. 427, 433, 499 A.2d 1074, 1077 (1985).

Through the cooperating defendant the government received access to the discussions between the remaining defendants and all counsel. The Superior Court said this possibility raised "the potential for devastation to the effective representation of the accused...." Noting that the attorney-client privilege is needed to permit free, open and candid communications between legal counsel and clients so that legal advice and legal representation can be grounded in the most candid, correct and complete information possible, the Superior Court continued: "Any criminal justice system must recognize that privacy and communications between the accused and his or her lawyer is necessary to effectuate the right to effective assistance of counsel."

The Superior Court held that since numerous defendants were the subject of a common group defense, "it would be reasonable for a defendant to assume that the other defendants are allied with him or her and that the confidentiality of statements made for the benefit of good preparation would stay confidential within the group until the appropriate time for disclosure, perhaps at trial." Quoting the *Harvard Law Review* Note, "Government Intrusions into the Defense Camp: Undermining the Right to Counsel," 97 Harv. L. Rev. 1143 (1984), the court said, "Defendants have both the right to prepare a group defense and the right to communicate privately with counsel; constitutional principles forbid requiring a defendant to waive one of these rights in order to exercise the other." The Superior Court has explicitly acknowledged that communications protected by the attorney-client privilege extends to multiple defendants engaged in a joint criminal defense. The presence of specific third parties who are involved jointly in the

defense does not negate the protection of the attorney-client privilege.

Judge Black of Lehigh County had occasion to review the joint defense privilege in the context of a civil case in *Young v. Presbyterian Homes Inc.,* 50 D.&C.4th 190 (2001). Judge Black found that the attorney-client privilege extended by the Superior Court to a joint defense agreement in criminal matters also applied in civil cases. Judge Black further reasoned that the exact parameters of the joint defense privilege did not have to be spelled out in a written agreement. Judge Black held that joint defense agreements are created "where the defendants have a common interest in defending against the plaintiff's claims, but they also have a potential conflict that, although theoretical, requires each to retain separate counsel."[12] "[I]t would be reasonable for a defendant to assume that the other defendants are allied with him or her and that the confidentiality of statements made for the benefit of group preparation would stay confidential within the group until the appropriate time for disclosure, perhaps at trial."[13]

The protection of privilege has been provided to confidential communications by a client to investigators,[14]

---

12. *Young v. Presbyterian Homes Inc.,* 50 D.&C.4th 190, 198-99 (2001)

13. *Young v. Presbyterian Homes Inc.,* 50 D.&C.4th 190, 196 (2001) (quoting *Commonwealth v. Scarfo,* 416 Pa. Super. 329, 377-78, 611 A.2d 242, 266 (1992).

14. *Commonwealth v. Noll,* 443 Pa. Super. 602, 607, 662 A.2d 1123, 1126 (1995), *appeal denied,* 543 Pa. 726, 673 A.2d 333 (1996) (confidential statement to accident reconstructionist hired by attorney to determine whether the client should sue is privileged).

paralegals, secretaries[15] or other employees[16] of the attorney when necessary to secure proper legal advice. It is no real extension to hold that is also applies to co-defendants and their lawyers working collectively. The attorney-client privilege is not waived where the third party shares a common interest in developing a legal strategy against identical claims.

Of course the privilege extends only to counsel and parties who have entered into a joint defense agreement and share a common interest in legal strategy. A shared common business interest is insufficient to afford protection. Most importantly, unless an individual attorney-client privilege independently shields material from discovery, the otherwise common interest among the parties is of no consequence.

The same reasoning applies to the work product doctrine. The work product doctrine is found only in Pa.R.C.P. 4003.3, which reads:

"Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal

15. *Commonwealth v. Mrozek,* 441 Pa. Super. 425, 428, 657 A.2d 997, 999-1000 (1995) (inculpatory statement to attorney's secretary made while defendant was seeking to retain attorney for legal representation and advice is privileged).

16. *Commonwealth v. Hutchinson,* 290 Pa. Super. 254, 262-65, 434 A.2d 740, 744-45 (1981) (inculpatory statement made to investigator for public defender's office is privileged).

research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics."

The protection against the discovery of work product is a limited protection for the mental processes of an attorney, providing a privileged area within which she can analyze and prepare her client's case.[17] The protection afforded to an attorney's and a representative's work product is limited. The explanatory note to Rule 4003.3 specifically acknowledges that work product is discoverable where the legal opinion of an attorney or another representative is a relevant issue in an action.[18] The explanatory note states in part:

"There may be situations where his [attorney's] conclusions or opinion as to the value or merit of a claim, not discoverable in the original litigation, should be discoverable in subsequent litigation. For example, suit is brought against an insurance carrier for unreasonable refusal to settle, resulting in a judgment against the insured in an amount in excess of the insurance coverage. Here discovery and inspection should be permitted in camera where required to weed out protected material...."[19]

If legal opinions, conclusions, memoranda, notes or summaries, legal research or legal theories are specifically relevant to issues in a case, the requesting party is

---

17. *The Birth Center v. The St. Paul Companies Inc.,* 727 A.2d 1144 (Pa. Super. 1999) (overruled in part for other grounds by *Mishoe v. Erie Insurance Co.* 573 Pa. 267, 824 A.2d 1153 (2003)).

18. Pa.R.C.P. 4003.3 explanatory note.

19. Pa.R.C.P. 4003.3 explanatory note.

not even required to show undue hardship to obtain discovery elsewhere.[20]

Plaintiff Executive Risk entered into an oral agreement to share privileged information with other insurers as part of a joint defense effort.[21] All insurers had a commonality of interest in defense of Cigna's claim for coverage of the Multidistrict Litigation. The participation of other parties and attorneys acting in concert does not waive the privilege. Plaintiff Executive Risk and all other insurers intended that all communications in furtherance of their interests remain confidential. Both attorney-client privilege and the work product privilege are applicable to all communications and documents exchanged between plaintiff Executive Risk and the other insurers prior to September 29, 2004 when the joint defense agreement terminated.

Attorney-client privilege and work product privilege have been waived as to communications or documents exchanged between plaintiff Executive Risk and the other insurers after September 29, 2004. A clear divergence of interest occurred once plaintiff Executive Risk expressed its unwillingness to attend the mediation. The interests of plaintiff Executive Risk were no longer identical with the other insurers. The joint defense agreement ceased to exist. Accordingly, Cigna's motion to compel is granted as it pertains to any documents exchanged

20. *The Birth Center v. The St. Paul Companies Inc.*, 727 A.2d 1144 (Pa. Super. 1999) (overruled in part for other grounds by *Mishoe v. Erie Insurance Co.* 573 Pa. 267, 824 A.2d 1153 (2003)).

21. Exhibits "C"—deposition of Peter Blejwas dated October 27, 2005 p. 31; and exhibit "D"—notes of Peter Blejwas to Executive Risk's brief in support of application of joint defense privilege. Plaintiff Executive Risk's exhibit "E," exhibit "F," exhibit "G," exhibit "H," exhibit "I" and exhibit "J" which were produced in camera.

after September 29, 2004 between plaintiff Executive Risk and the other insurers and denied as to documents prior to that date.

## C. *Cigna's Motion To Produce Handwritten Notes of Peter Blejwas Is Granted in Part and Denied in Part*

Cigna seeks discovery of handwritten notes prepared by plaintiff Executive Risk's claims examiner assigned to the Multidistrict Litigation. These notes have been produced for in camera inspection.[22] After examination, the court finds that most of these notes contain contemporaneous communications recorded during conferences with either in house counsel or counsel for the joint defense group and concern legal opinions on the insuring agreement, forum selection, this declaratory action and the terms of the multidistrict settlement. These communications are protected by the joint attorney-client privilege and are not discoverable.

The one document designated as ERII0336864 does not record any protected communications. Neither does it appear to contain any mental impressions, conclusions or opinions. Cigna's motion to compel is granted as to ERII0336864.

## D. *Cigna's Petition for the Issuance of Commissions Is Granted*

Cigna seeks the issuance of commissions for the out-of-state depositions of Evan Shapiro, Esquire, claims counsel for AESIC; Stephanie Lebowitz, Esquire, claims

---

22. The documents in question are ERII036838-842, ERII036843-847, ERII036848-863, ERII0336864-66, ERII36871-872, ERII036873-885, ERII036886-908 and ERII0369014-916.

counsel for Steadfast; and Haralyn Isaac, Esquire, claims counsel for AESIC, to determine the circumstances under which plaintiff Executive Risk left the mediation. Cigna's request to depose counsel regarding the circumstances in which plaintiff Executive Risk left the mediation is granted. After September 29, 2004, plaintiff Executive Risk and the First Excess Carriers no longer shared a commonality of interest and no joint defense agreement existed. Communications between counsel for plaintiff Executive Risk and the First Excess Layer Insurers after September 29, 2004 are not protected by either the attorney-client privilege or the work product privilege.

Neither are communications outside of the mediation itself protected by the mediation privilege. Either the Pennsylvania or New York mediation privilege applies. The Pennsylvania choice of law analysis initially requires a determination of whether the laws of the competing states actually differ. If there is no significant difference, no further analysis is necessary. Only if a court determines a conflict of law exists must it determine which state has the greater interest in the application of its law.[23]

The Pennsylvania mediation privilege is codified at 42 Pa.C.S. §5949:

"(a) General rule. Except as provided in subsection (b), all mediation communications and mediation documents are privileged. Disclosure of mediation communications and mediation documents may not be required or compelled through discovery or any other process. Mediation communications and mediation documents shall not be admissible as evidence in any action or pro-

23. *Ratti v. Wheeling Pittsburgh Steel Corp.,* 758 A.2d 695, 702 (Pa. Super. 2000).

ceeding, including, but not limited to, a judicial, administrative or arbitration action or proceeding . . . ."

"By its language, the mediation privilege in 42 Pa.C.S. §5949 is one of the broadest privileges in Pennsylvania. It absolutely protects not only results but all communications including any demands for settlement or offers in compromise from disclosure. The only exceptions are for evidence necessary for litigation surrounding a settlement itself and for criminal conduct during the mediation."[24]

In New York, parties are encouraged to be candid and to disclose fully their circumstances and positions in mediation and therefore all disclosures that are relevant to the subject of mediation or litigation made in the context of mediation are confidential even though the adversary party is present.[25]

Both states protect from disclosure all mediation communications or documents between actual parties to the mediation. The court in *United States Fidelity and Guaranty Company v. Bilt-Rite Contractors Inc.,* an Eastern District of Pennsylvania case applying Pennsylvania law, set out the purpose of the mediation privilege thusly:

"If participants cannot rely on the confidential treatment of everything that transpires during [mediation] sessions then counsel of necessity will feel constrained to conduct themselves in a cautious, tightlipped, noncommittal manner more suitable to poker players in a

24. Bernstein, 2006 Pa. Rules of Evidence, comment 19 to Pa.R.E. 501(Gann).

25. *Bauerle v. Bauerle,* 206 A.D.2d 937, 940 (N.Y. App. Div. 1994) (citing *American Airlines v. National Mediation Bd.,* 588 F.2d 863; see also, Judiciary Law §849-b(6); Demuth, "Theories for Protecting Mediation," reprinted in *Confidentiality in Mediation: A Practitioner's Guide* 155-64 (American Bar Assn. 1980)).

high-stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute. This atmosphere if allowed to exist would surely destroy the effectiveness of a program which has led to settlements…, thereby expediting cases at a time when . . . judicial resources . . . are sorely taxed."[26]

This description is appropriate for both states privileges. The laws of New York and Pennsylvania do not differ in the protections afforded mediations communications.

Plaintiff Executive Risk does not have standing to claim the mediation privilege protection. Plaintiff Executive Risk did not participate in the preparation for the mediation, did not sign the mediation agreement and was asked to leave when its representatives arrived. Communications between plaintiff Executive Risk and the First Excess Insurers are not subject to the mediation privilege. AESIC's, Steadfast, Travelers and Gulf's signed the mediation agreement and participated in the mediation. AESIC's, Steadfast, Travelers and Gulf's may assert any applicable mediation privilege.[27] Cigna's motion to compel the commissions is granted.

---

26. 2005 U.S. Dist. Lexis 9299, *18 (E.D. Pa. 2005) (citing *Lake Utopia Paper Ltd. v. Connelly Containers Inc.*, 608 F.2d 928, 930 (2d Cir. 1979)).

27. The court assumes that counsel was integrally involved in the claims handling of the multidistrict litigation and therefore not afforded the protections of the attorney-client or work product privileges. See *The Birth Center v. The St. Paul Companies Inc.*, 727 A.2d 1144 (Pa. Super. 1999) (overruled in part for other grounds by *Mishoe v. Erie Insurance Co.* 573 Pa. 267, 824 A.2d 1153 (2003)); see also, *General Refractories Co. v. Fireman's Fund Insurance Co.*, 45 D.&C.4th 159, 169-70 (Phila. Cty. 2000) (holding that where counsel is integrally involved with the denial of the claim or the legal opinion

## CONCLUSION

For the foregoing reasons, Cigna's motions to compel are granted in part and denied in part:

(1) Defendant Cigna Corporation's motion to compel reinsurance information is granted and Executive Risk shall respond to the requested discovery within 20 days.

(2) Defendant Cigna Corporation's motion to compel valuation information is denied.

(3) Cigna Corporation's petition for issuance of commissions for out of state depositions of Evan Shapiro, Esquire, Stephanie Lebowitz, Esquire and Haralyn Isaac, Esquire is granted.

(4) Cigna Corporation's motion to compel the production of Peter Blejwas' handwritten notes is granted only to the extent that plaintiff Executive Risk shall produce ERII0336864 within 20 days of this order.

The court further finds that a joint defense agreement existed between Executive Risk and the other insurers between February 2002 to September 29, 2004. A new case management order is issued herewith. An order consistent with this opinion will follow.

## ORDER

And now, August 18, 2006, upon consideration of Cigna Corporation's motions to compel discovery and petition for issuance of commissions, responses in opposition, memoranda and in accord with the contemporaneous memorandum opinion, it hereby is ordered that said motions are granted in part and denied in part:

---

of an attorney is otherwise relevant to the bad faith claim, the attorney's advice or opinions are not shielded from discovery by the work product doctrine).

(1) Defendant Cigna Corporation's motion to compel reinsurance information is granted and Executive Risk shall produce the requested reinsurance information within 20 days.

(2) Defendant Cigna Corporation's motion to compel valuation information is denied.

(3) Cigna Corporation's petition for issuance of commissions for out of state depositions of Evan Shapiro, Esquire, Stephanie Lebowitz, Esquire and Haralyn Isaac, Esquire is granted.

(4) Cigna Corporation's motion to compel the production of Peter Blejwas' handwritten notes is granted only to the extent plaintiff Executive Risk shall produce ERII0336864 within 20 days of this order.

The court further finds that a joint defense agreement existed between Executive Risk and the other insurers between February 2002 to September 29, 2004 and a joint defense privilege is applicable.

A new case management order is issued herewith.